1   M. RANDALL OPPENHEIMER (S.B. #77649)
    roppenheimer@omm.com
2   CATALINA J. VERGARA (S.B. #223775)
    cvergara@omm.com
3   O'MELVENY & MYERS LLP
    400 South Hope Street
4   Los Angeles, CA 90071-2899
    Telephone:    (213) 430-6000
5   Facsimile:    (213) 430-6407

6   BRIAN D. BOYLE (S.B. #126576)
    bboyle@omm.com
7   O'MELVENY & MYERS LLP
    1625 Eye Street, NW
8   Washington, DC  20006
    Telephone:    (202) 383-5300
9   Facsimile:    (202) 383-5414

10  Attorneys for Defendants
    CHEVRON CORPORATION and
11  CHEVRON CORPORATION ESIP
    INVESTMENT COMMITTEE

12

                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                        OAKLAND DIVISION
15

16

17  CHARLES E. WHITE, JR., *et al.*,          Case No.  4:16-cv-00793-PJH

                        Plaintiffs,           **DEFENDANTS' REPLY BRIEF IN**
18                                            **SUPPORT OF MOTION TO DISMISS**
                                              **PLAINTIFFS' COMPLAINT;**
19          v.                                **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN SUPPORT THEREOF**
    CHEVRON CORPORATION, *et al.*,
20
                        Defendants.           Date:           June 22, 2016
21                                            Time:           9:00 a.m.
                                              Judge:          Hon. Phyllis J. Hamilton
22                                            Courtroom:      3, 3rd Floor

23                                            Complaint Filed: February 17, 2016
                                              Trial Date:      None set
24

25

26

27

28

                                              DEFS.' REPLY ISO MOT. TO DISMISS
                                              CASE NO. 4:16-CV-00793-PJH

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND ISSUES TO BE DECIDED ..................................................... 1

II.     LEGAL STANDARD ......................................................................................... 3

III.    ARGUMENT ................................................................................................... 4

    A.      Plaintiffs Effectively Concede That Their "Disloyalty" Claims Must Be
       Dismissed. ........................................................................................ 4

    B.      Plaintiffs Are Incorrect That ERISA Requires Plans To Include Stable
       Value Funds In Their Investment Lineups. ............................................... 5

    C.      Plaintiffs Have Not Plausibly Pleaded That The Plan Fiduciaries Acted
       Imprudently In Choosing To Offer Some Retail Mutual Funds. ..................... 8

    D.      Plaintiffs Do Not Plausibly Allege Any Imprudence In The Plan's
       Recordkeeping Arrangement. .............................................................. 11

    E.      Plaintiffs Fail To State A Claim That Defendants Inadequately Monitored
       The Artisan Small Cap Value Fund ....................................................... 12

    F.      Plaintiffs Admit That Their "Failure To Monitor Fiduciaries" Claim Lacks
       Substance ....................................................................................... 14

IV.     CONCLUSION .............................................................................................. 14

DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
   446 F.3d 728 (7th Cir. 2006)..................................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................. 3

*Braden v. Wal–Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009)........................................................ 4, 5, 10

*Donovan v. Bierwirth*,
   680 F.2d 263 (2d Cir. 1982)................................................................. 5

*Erickson v. Pardus*,
   551 U.S. 89 (2007).............................................................................. 3

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014).................................................................... 4, 7

*George v. Kraft Foods Global, Inc.*,
   641 F.3d 786 (7th Cir. 2011)............................................................ 12

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009)................................................... 9, 10, 11

*In re McKesson HBOC, Inc. ERISA Litig.*,
   391 F. Supp. 2d 812 (N.D. Cal. 2005) ................................................. 5

*Jenkins v. Yager*,
   444 F.3d 916 (7th Cir. 2006)........................................................... 13

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014)........................................................... 3

*Loomis v. Exelon*,
   658 F.3d 667 (7th Cir. 2011)......................................................... 9, 10

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Centers
   Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013)...................................................... *passim*

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page(s)**

4

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) ....................................................................................... 5, 9, 10, 11

5

6

*Romero v. Nokia, Inc.*,
  No. C 12-6260 PJH, 2013 WL 5692324 (N.D. Cal. Oct. 15, 2013) ................................... 3, 4, 5

7

8

*Tibble v. Edison Int'l*,
  729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015),
  *and aff'd on remand*, — F.3d —, 2016 WL 1445220 (9th Cir. Apr. 13, 2016) ..................... 6, 9

9

10

*Tussey v. ABB, Inc.*,
  746 F.3d 327 (8th Cir. 2014) ....................................................................................... 10

11

**Statutes**

12

29 C.F.R. § 2550.404a-1(b)(1)(i) ....................................................................................... 7

13

29 U.S.C. § 1004(a)(1)(D) ....................................................................................... 5

14

29 U.S.C. § 1104(a)(1)(A) ....................................................................................... 4, 5

15

29 U.S.C. § 1104(a)(1)(B) ....................................................................................... 8

16

**Rules**

17

Fed. R. Civ. Proc. 12(b)(6) ....................................................................................... 3

18

**Reports**

19

20

DOL ERISA Advisory Council,
  *Report on Stable Value Funds and Retirement Security in the Current*
  *Economic Conditions* (2009) ....................................................................................... 7

21

22

**Regulations**

23

72 Fed. Reg. at 60,473 n.35 (Oct. 24, 2007) ....................................................................................... 7

24

25

26

27

28

DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION AND ISSUES TO BE DECIDED[1]**

3          This motion presents a simple question:  Have plaintiffs alleged facts sufficient to support

4     a reasonable inference of wrongdoing in Chevron's stewardship of its employees' 401(k) plan?

5     The unambiguous answer to that question is no.  Plaintiffs' allegations depict an attentively

6     managed 401(k) plan that made a broad array of high-quality, low-cost investment options

7     available to Chevron employees for their retirement savings, and adjusted those offerings, as

8     appropriate, over time.  The only plausible inference from plaintiffs' pleading is unremitting

9     prudence and loyalty in the fiduciaries' decision-making.  Plaintiffs attempt to avoid that

10    inference with rhetorical posturing, largely ignoring the pleading defects identified in Chevron's

11    motion, not to mention the controlling Ninth Circuit precedent rejecting similar claims.  Among

12    the fatal deficiencies in plaintiffs' arguments:

13          •    Plaintiffs offer ***no facts*** in support of their duty of loyalty claims.  Instead, they insist

14               that proof of imprudence suffices to establish a claim of disloyalty—but that ignores

15               the case law establishing that the standards applicable to the duties of loyalty and

16               prudence are different.  A disloyalty claim requires some showing that the plan

17               fiduciaries made decisions according to corporate or personal interests, rather than the

18               plan's interests.  Here, there is nothing to suggest the Chevron fiduciaries were guided

19               by anything but what was best for Plan participants.

20          •    Plaintiffs say they are not alleging that offering a money market fund to Plan

21               participants was a *per se* breach of fiduciary duty, yet Count I is premised on nothing

22               more than the presence of a money market fund in the Plan lineup in lieu of a stable

23               value option.  That is the essence of their claim.  Plaintiffs introduce unpleaded

24               assertions about the relative risks and benefits of money market and stable value, but

25               they cannot dispute that the Plan fiduciaries' decision to offer a money market fund

26               comports with explicit DOL guidance, the practices of many other 401(k) plans, the

27

28    ---
      [1] This brief uses the shorthand conventions defined in defendants' opening memorandum.

DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

Ninth Circuit's on-point decision in *Tibble* (which plaintiffs ignore in their opposition), and the Plan's own investment policy statement ("IPS").

- Plaintiffs concede that ERISA does not require plan fiduciaries to be guided by the cost of investment options alone, yet they maintain that Count II is viable on a new (and, for that matter, unpleaded) theory that the Plan fiduciaries could have provided the "exact same investments" to participants at a lower overall cost.  That is pure fiction.  Defendants' opening motion demonstrates why mutual funds, separate accounts, and collective trusts are not one and the same, as multiple courts have recognized in dismissing identical claims.  Plaintiffs fail to address these differences in their opposition.  They also turn a blind eye to the fact—alleged in their own Complaint—that the Plan fiduciaries moved the Plan's mutual fund investments into lower-cost share classes as they became available over the class period.

- Plaintiffs try to mask the absence of any facts supporting Count III (charging that Chevron fiduciaries overpaid Vanguard for administrative services) by blaming defendants for their alleged failure to state in their motion "how much Vanguard received in total compensation, much less how that compensation was reasonable . . . ."  But plaintiffs have it backwards.  It is ***their burden*** to allege facts sufficient to state a claim, not defendants' obligation to offer facts to refute a groundless claim.  Chevron's use of an asset-based fee arrangement to compensate the Plan's recordkeeper early in the class period was commonplace and permissible under ERISA, as every court confronted with plaintiffs' counsel's contrary claim has held.

- Plaintiffs concede that the Artisan Small Cap Value Fund did not start to significantly underperform until 2012 and admit that the Fund's removal shows that the Plan fiduciaries were monitoring it.  These concessions eviscerate Count IV.

- Finally, plaintiffs acknowledge that they lack the necessary facts to support their failure to monitor claim (Count V), requiring its dismissal as well.

Plaintiffs' position on all of these claims appears to be that, although they are unable to allege the facts necessary to state cognizable claims, they should be permitted to go fishing in

DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

1    discovery because they have alleged conclusory theories that could be "plausible."  But federal

2    pleading standards are not satisfied by plaintiffs' characterization of their own claims as

3    "plausible."  Plaintiffs must actually allege facts sufficient to support their claims—not just posit

4    theories unmoored from the facts alleged in their own Complaint.  Far from raising any plausible

5    inference of fiduciary error, plaintiffs' allegations compel the ***opposite*** conclusion:  that the

6    Chevron Plan fiduciaries applied rigorous, best-in-class fiduciary practices to their decisions on

7    behalf of the Plan.  Other courts confronted with putative ERISA claims that were better pled than

8    plaintiffs' have not hesitated to dismiss those claims.  This Complaint should likewise be

9    dismissed for failure to state a claim.

10   **II.    LEGAL STANDARD**

11         Plaintiffs' bid for full-blown litigation of their claims builds from their insistence that they

12   are not required to allege any "[s]pecific facts" to make out a plausible claim.  Opp'n at 2:19–20.[2]

13   Yet the Supreme Court has repeatedly explained that, for a complaint to withstand scrutiny under

14   Federal Rule of Civil Procedure 12(b)(6), it must set forth allegations that raise a plausible

15   inference of wrongdoing.  Mot. at 6:13–24 (discussing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

16   (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  This requires more than

17   "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citing

18   *Twombly*, 550 U.S. at 557).  Thus, a complaint cannot survive if it alleges facts that create only a

19   "sheer possibility that [the defendant] has acted unlawfully," because "[w]here a complaint pleads

20   facts that are merely consistent with a defendant's liability, it stops short of the line between

21   possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (quotation omitted).

22

23   [2] In support of this proposition, plaintiffs cite this Court's opinion in *Romero v. Nokia, Inc.*, No. C
     12-6260 PJH, 2013 WL 5692324, at *2 (N.D. Cal. Oct. 15, 2013), which, in turn, quoted from

24   *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  As the Ninth Circuit has explained, to
     reconcile the tension between the "plausibility standard" set out in *Iqbal* and *Twombly* with "the

25   more lenient pleading standard" articulated in *Erickson* and other similar cases, the Circuit has
     developed a test that, among other things, requires allegations in a complaint to "contain *sufficient*

26   *allegations of underlying facts* to give fair notice and to enable the opposing party to defend itself

27   effectively."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations omitted;
     emphasis added).  Minute detail may not be required, but actual facts are.

28

DEFS.' REPLY ISO MOT. TO DISMISS
                                                                                CASE NO. 4:16-CV-00793-PJH

1    Courts have not hesitated to apply that standard faithfully in the ERISA context.  In

2    *Dudenhoeffer*, the Supreme Court explained that motions to dismiss are a crucial "mechanism for

3    weeding out meritless [ERISA] claims," requiring "careful judicial consideration of whether the

4    complaint states a claim that the defendant has acted imprudently."  *Fifth Third Bancorp v.*

5    *Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).  While a plaintiff is not expected to have a direct

6    line of sight into the fiduciary decision-making process—and thus need not necessarily allege

7    facts directly related to the way in which a plan was managed—she must nonetheless allege facts

8    supporting the conclusion that that process was flawed, so that "the court, based on circumstantial

9    factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'"  *See*

10   *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan*

11   *Stanley Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 718–20 (2d Cir. 2013) (citing *Braden v.*

12   *Wal–Mart Stores, Inc.*, 588 F.3d 585, 596, 598 (8th Cir. 2009) and noting that ERISA's

13   "extensive disclosure requirements" give plan beneficiaries information on which they can base a

14   claim).  Applying these standards, courts have dismissed meritless ERISA claims without

15   hesitation, including claims that are materially indistinguishable from those advanced here.  *See*

16   Mot. at 3–4.

17   **III.    ARGUMENT**

18
        **A.    Plaintiffs Effectively Concede That Their "Disloyalty" Claims Must Be**
19          **Dismissed.**

20    Defendants' opening memorandum explained that plaintiffs' claims for breach of the duty

21   of loyalty must be dismissed, because plaintiffs do not allege a single fact remotely suggesting

22   that the Plan fiduciaries failed to act "solely in the interest" of the Plan's participants.  Mot. at 7,

23   citing 29 U.S.C. § 1104(a)(1)(A).  Plaintiffs' opposition essentially concedes the point, because

24   plaintiffs still do not identify any factual allegation establishing conflicted conduct.  Plaintiffs

25   persist in tagging each allegedly imprudent decision they complain about as "disloyal."  That is a

26   legal conclusion, not a fact, and it does not sustain plaintiffs' disloyalty claim.  *See*, *e.g.*, *Romero*

27   *v. Nokia, Inc.*, No. C 12-6260 PJH, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013)

28   (Hamilton, J.) (dismissing breach of duty of loyalty claims where plaintiff neither challenged

DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

defendants' argument that the disloyalty claims hinged on the imprudence allegations nor offered any new allegations showing a breach of the duty of loyalty).

Plaintiffs argue that their allegations suffice because the duty of loyalty includes "a duty to cause the Plan to incur only reasonable expenses." Opp'n at 5:7–8. They are mistaken. An unadorned assertion that a fiduciary caused a plan to incur excessive fees is an imprudence claim. A disloyalty claim, in contrast, requires an allegation that a fiduciary's **_purpose_** in its decision was to benefit itself, or another party other than the plan, rather than to cover plan benefits and expenses. *See* 29 U.S.C. § 1104(a)(1)(A); *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (duty of loyalty requires fiduciaries to discharge their duties with "an eye single to the interests of the participants and beneficiaries"); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 834–35 (N.D. Cal. 2005) (duty of loyalty requires that fiduciaries refrain from "actual disloyal conduct"). Accordingly, excessive fee allegations relate to a disloyalty claim only where the alleged facts support the inference that the fees were incurred as a result of a fiduciary's divided loyalty. *See Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011) (distinguishing *Braden*, 588 F.3d 585, which involved a concealed kickback scheme, and affirming dismissal of disloyalty claim where the "allegations concerning fees are directed exclusively to the fee structure and are limited to contentions that [the plan sponsor] should have paid per-participant fees rather than fees based on a percentage of assets in the plan"). Plaintiffs allege nothing of the kind here, and thus plaintiffs' disloyalty claims should be dismissed. *See Renfro*, 671 F.3d at 327; *Romero*, 2013 WL 5692324, at *5 (dismissing breach of loyalty claims with prejudice).

## B.   Plaintiffs Are Incorrect That ERISA Requires Plans To Include Stable Value Funds In Their Investment Lineups.

Count I of the Complaint asserts a blanket rule that defined contribution plans must offer stable value funds as capital preservation options instead of money market funds.[3] Compl. ¶ 37.

---

[3] Plaintiffs also argue that the choice of a money market fund was inconsistent with the Plan IPS and thus violated ERISA § 404(a)(1)(D), 29 U.S.C. § 1004(a)(1)(D). Opp'n at 8:5–8, 10:17–21. That argument is defeated by plaintiffs' acknowledgement that this money market fund at all
(*footnote continued next page*)

DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

1    Plaintiffs now concede that providing a money market fund is not a *per se* breach of fiduciary

2    duty, Opp'n at 15:1–2, and yet their opposition effectively doubles down on that theory, drawing

3    in a variety of unpleaded assertions of the relative risks and benefits of money market funds and

4    stable value funds to argue that any prudent fiduciary would have selected a stable value

5    alternative.  *E.g.*, Opp'n at 8:13–20, 9:8–13, 9:17–26.  That claim is unsustainable as a matter of

6    law.

7           First, and perhaps most critically, plaintiffs' insistence that any prudent fiduciary would

8    have selected a stable value alternative—in other words, that ERISA categorically requires stable

9    value investing—is the very theory the Ninth Circuit has already rejected (in a case brought by

10   plaintiffs' counsel).  *See Tibble v. Edison Int'l* ("*Tibble I*"), 729 F.3d 1110, 1136 (9th Cir. 2013),

11   *vacated on other grounds*, 135 S. Ct. 1823 (2015), *and aff'd on remand*, — F.3d —, 2016 WL

12   1445220 (9th Cir. Apr. 13, 2016); *see also* Mot. at 9:8–20.  Plaintiffs chose not to address the

13   application of this controlling authority in their opposition brief, but they cannot wish it away.

14   Under *Tibble*, Count I must be dismissed.

15          Second, even if *Tibble* were not on the books, the only conduct of the defendants that

16   plaintiffs allege to support their claim is that the Plan offers a money market fund and not a stable

17   value fund.  Put differently, plaintiffs contend that the mere absence of a stable value fund in a

18   plan lineup, standing alone, is sufficient to allege a plausible claim that the Plan fiduciaries

19   imprudently failed to consider a stable value fund.  That is simply a warmed-over version of the

20   categorical imprudence claim that plaintiffs profess to no longer be bringing.  Under plaintiffs'

21   circular logic, the fiduciaries of nearly one in five 401(k) plans would be susceptible to a claim of

22   fiduciary breach merely because they do not offer a stable value fund to their plan's participants.

23   Vergara Declaration in Support of Motion to Dismiss, Ex. O (Met Life Study) at 5.

24

25   ───────────────────────

25   times provided income, capital preservation, and liquidity, and that stable value funds present risk

26   and liquidity downsides.  Opp'n at 16:22–25.  The IPS, like ERISA itself, affords the Plan

        fiduciaries latitude to exercise their judgment in weighing the virtues and vices of the various

27   capital preservation alternatives available on the market.  Mot. at 10:2–12.  Plaintiffs allege no

        basis for questioning that judgment here.

28

                                                              DEFS.' REPLY ISO MOT. TO DISMISS
                                                              CASE NO. 4:16-CV-00793-PJH

Plaintiffs also point to the fact that the majority of "large 401(k) plans" offer stable value funds. Opp'n at 9:13–14.  Their implicit rule that plan fiduciaries must select the most prevalent investment offerings runs directly contrary to the long-recognized principle (enshrined in the DOL's regulations) that plan fiduciaries must at all times make an independent determination of what investment choices best suit the need of their particular plans.  *See*, *e.g.*, 29 C.F.R. § 2550.404a-1(b)(1)(i) (fiduciary must give "appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties").  Plaintiffs would have plan fiduciaries follow the herd in selecting investment options—and would subject them to liability for any deviation from the majority approach—even if a less common option were better suited to their particular plan.

Third, while plaintiffs laud what they believe to be the benefits of a stable value fund over a money market fund,[4] they also acknowledge that stable value investing entails risks and restrictions, including risks not present with money market funds. Opp'n at 16:6–12.  Plaintiffs also accept that the DOL has specifically warned investors about stable value investing, proffering money market funds as suitable capital preservation alternatives.  Opp'n at 14:4–17; *see also* Mot. at 12:2–13 (citing 72 Fed. Reg. at 60,473 n.35 (Oct. 24, 2007); DOL ERISA Advisory Council, *Report on Stable Value Funds and Retirement Security in the Current Economic Conditions* (2009)).  These concessions preclude plaintiffs from establishing—as they must—that the only prudent option was stable value.  *See Dudenhoeffer*, 134 S. Ct. at 2473 (an ERISA plaintiff must plausibly allege that a prudent fiduciary in the defendant's position "could not have concluded" that the investment decision was appropriate for the plan).  As countless

---

[4] Plaintiffs suggest that the Plan's large size rendered a stable value fund an obviously superior option for the Plan.  Opp'n at 17:17–21.  There is no logical reason why that would be so.  If anything, a very large investor may be disadvantaged in finding a provider with the capacity to invest and (in particular) to insure its invested assets.

DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

1  courts have recognized, plan fiduciaries must balance the relative risks of available investment

2  alternatives, and are afforded deference under ERISA in that balancing.  *E.g.*, *Armstrong v.*

3  *LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006) (fiduciary decision-making typically

4  requires "balancing of competing interests under conditions of uncertainty," and ERISA's duty of

5  prudence does not seat fiduciaries on a "razor's edge" in striking that balance).  Plaintiffs' only

6  basis for questioning the balance struck by the Plan's fiduciaries is that, over the period in

7  question, stable value funds have outperformed money market investments.  But that hindsight

8  critique is foreclosed by the well-settled principle (written into the statute itself) that fiduciaries'

9  actions are examined "based upon information available to [them] at the time of each investment

10  decision and not from the vantage point of hindsight," *St. Vincent*, 712 F.3d at 716; 29 U.S.C.

11  § 1104(a)(1)(B) (fiduciary conduct is analyzed "under the circumstances then prevailing").

12  Finally, plaintiffs fault defendants for not explaining in their motion why they selected a

13  money market option for the Plan, Opp'n at 17:5–8—but this, again, reverses the applicable

14  standard on a motion to dismiss.  The burden is on ***plaintiffs*** to allege why the selection of a

15  perfectly common investment option that has been explicitly sanctioned as a prudent capital

16  preservation alternative by the Ninth Circuit and the DOL alike should be cast as imprudent.  *See*

17  *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a

18  defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

19  relief.") (quotations omitted).  While plaintiffs argue that the reason the Plan fiduciaries selected a

20  money market option is a "factual dispute to be resolved at summary judgment or trial, not on the

21  pleadings," Opp'n at 17:7-8, that would be so only if plaintiffs' allegations in Count I were

22  sufficient to invite a plausible inference of breach.  They are not, and Count I must be dismissed.

### C.  Plaintiffs Have Not Plausibly Pleaded That The Plan Fiduciaries Acted Imprudently In Choosing To Offer Some Retail Mutual Funds.

25  Plaintiffs' second claim is that the Plan fiduciaries could have offered cheaper investment

26  options, whether by selecting separate account products instead of mutual funds, more

27  institutional-class shares of mutual funds, or only Vanguard-managed products.  Compl. ¶¶ 39–

28  77.  But ERISA does not require Plan fiduciaries to focus on cost to the exclusion of all other

1  factors.  As courts have repeatedly recognized—and as plaintiffs admit, Opp'n at 18:21–24—

2  "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest

3  possible fund (which might, of course, be plagued by other problems)."  *Hecker v. Deere & Co.*,

4  556 F.3d 575, 586 (7th Cir. 2009); *accord Tibble I*, 729 F.3d at 1135.

5          Plaintiffs argue that this black-letter principle does not preclude their claims because they

6  allege that "Defendants could have provided the *exact same investment* at a lower cost."  Opp'n at

7  19:2–4 (emphasis in original).[5]  But they do not and cannot allege that different investment

8  products (collective trusts or separate accounts)[6] and products offered by an entirely different

9  investment manager (Vanguard)[7] amount to "the exact same investment."  Those claims thus

10  founder on the principle just discussed, because the Plan fiduciaries were not required to proceed

11  blindly with the cheapest possible options.  In fact, courts have repeatedly dismissed claims

12  offered in identical terms.  *Tibble I*, 729 F.3d at 1135 (rejecting argument that, as a rule,

13  institutional classes should be offered over retail-class funds); *Loomis v. Exelon*, 658 F.3d 667,

14  670–74 (7th Cir. 2011)  (dismissing claim that fiduciaries should have offered institutional

15  funds); *Renfro*, 671 F.3d at 319, 326–28 (dismissing claim that fiduciaries should have selected

16  cheaper funds); *Hecker*, 556 F.3d at 586–87 (same).

17          Plaintiffs also argue that the Plan fiduciaries could have offered cheaper share classes of

18  the funds actually included in the lineup.  Their theory is, essentially, that the mere inclusion of a

19  mutual fund with a higher expense ratio than that of the lowest share class is, standing alone,

20  sufficient to state a claim that the fiduciaries failed to consider lower cost options.  Those

21  identical facts were found insufficient to establish a breach in *Tibble I*.  729 F.3d at 1135

22

23  [5] The allegations in plaintiffs' complaint are different; there, they alleged "similar" investments,
    "comparable" options, and funds employing the "same investment style" were available.  Compl.
24  ¶¶ 56, 58–59, 75.
    [6] As defendants explained in their underlying motion, courts have recognized that it is
25  inappropriate to compare different investment vehicles by cost, because they are different
    products with distinct characteristics.  Mot. at 17:21–18:15 (citing *Tibble I*, 729 F.3d at 1135;
26  *Hecker*, 556 F.3d at 586; *Loomis*, 658 F.3d at 670).  Plaintiffs failed to address these authorities in
    their opposition.
27  [7] *See* Mot. at 16:22–17:18.

28

DEFS.' REPLY ISO MOT. TO DISMISS
                                          CASE NO. 4:16-CV-00793-PJH

1  (rejecting the claim "that a fiduciary should have offered only wholesale or institutional funds").

2  Moreover, plaintiffs' claims here are defeated by what they actually plead:  that the Plan

3  fiduciaries continually moved the Plan into cheaper share classes throughout the class period,

4  supporting the clear inference that the fiduciaries were seeking to take advantage of those

5  opportunities as they arose.  Plaintiffs cite *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014), and

6  *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), to argue that they should be

7  permitted to explore whether there was nevertheless some imprudence in ***how*** the fiduciaries

8  selected share classes for the Plan, but those cases do not help plaintiffs here.  In both cases—

9  unlike this one—the plaintiffs alleged facts (including plausible allegations of disloyalty, in

10  particular) that supported the inference that the fiduciaries' process was flawed.  *See Tussey*, 746

11  F.3d at 331, 335–36 (finding "allegations of wrongdoing with respect to fees [sufficient to] state a

12  claim for fiduciary breach" where "[a]n outside consulting firm advised ABB it was overpaying

13  for Plan recordkeeping services and cautioned that the revenue sharing Fidelity received under the

14  Plan might have been subsidizing the other corporate services Fidelity provided to ABB" and

15  ABB did nothing to investigate or address this issue); *Braden*, 588 F.3d at 590, 594–95 (finding

16  allegations that the mutual funds paid "kickbacks . . . [to the fund's trustee] in exchange for

17  inclusion of their funds in the Plan," together with allegations that the fund offered only ten retail-

18  class mutual funds despite its large size, were sufficient to state a claim of fiduciary breach).

19  Lacking any such allegations, plaintiffs' conclusory claim—like the claims that failed in *Loomis*,

20  *Renfro*, and *Hecker*—must be dismissed.[8]

21

22

---

23  [8] Contrary to plaintiffs' assertion, Opp'n at 18 n.4, courts can and do consider the total menu of
available investment options in assessing whether excessive-fee allegations are plausible.  *See St.*
24  *Vincent*, 712 F.3d at 717 ("[T]he prudence of each investment is not assessed in isolation but,
rather, as the investment relates to the portfolio as a whole."); *Renfro*, 671 F.3d at 327 ("[W]e
25  hold the range of investment options and the characteristics of those included options—including
the risk profiles, investment strategies, and associated fees—are highly relevant and readily
26  ascertainable facts against which the plausibility of claims challenging the overall composition of
a plan's mix and range of investment options should be measured."); *Loomis*, 658 F.3d at 673–74
27  (same); *Hecker*, 556 F.3d at 586 (same).

28

DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

1

**D.      Plaintiffs Do Not Plausibly Allege Any Imprudence In The Plan's Recordkeeping Arrangement.**

2

3        Arguing that their claim regarding allegedly excessive recordkeeping fees should survive

4   a motion to dismiss, plaintiffs again attempt to turn the pleading standard of review on its head.

5   They assert that this case must proceed to discovery because "[d]efendants themselves do not

6   state how much Vanguard received in total compensation, much less how that compensation was

7   reasonable . . . ."  Opp'n at 21:21–23.  But defendants do not have an obligation to state anything.

8   Rather, ***plaintiffs*** must plead facts that create more than a "sheer possibility that [the Plan

9   fiduciaries] ha[ve] acted unlawfully" to make a plausible claim for relief and to survive a motion

10  to dismiss.  *Iqbal*, 556 U.S. at 678.  They have not done so, and thus their claim for excessive

11  recordkeeping fees cannot survive.

12       All plaintiffs plead in support of their recordkeeping claim is that, for two years,

13  defendants paid recordkeeping fees using an asset-based revenue-sharing arrangement.  Compl.

14  ¶¶ 80–82, 86.  As defendants have already established, using asset-based revenue sharing to cover

15  recordkeeping expenses is both common and prudent.  Mot. at 19 (citing *Hecker*, 556 F.3d at 585,

16  and *Renfro*, 671 F.3d at 326–28).  Plaintiffs argue that *Hecker* and *Renfro* do not address the

17  propriety of asset-based recordkeeping fees, Opp'n at 22 n.12, but they do.  *Hecker*, 556 F.3d at

18  585 (noting that an arrangement whereby "Fidelity Trust . . . recovered its [administrative] costs

19  from the Deere participants" by "assess[ing] asset-based fees against the various mutual funds"

20  "violate[d] no statute or regulation"); *Renfro*, 671 F.3d at 326 (affirming dismissal of claims of

21  imprudence based on "Fidelity's fee compensation on the mutual funds, which is in part

22  calculated as a percentage of the total assets in the funds" because "[p]laintiffs contend the

23  services required to administer mutual funds do not vary based on the aggregate amount of assets

24  in the funds . . . [and] fees should be calculated on a per-participant basis").

25       Nor does the fact that the Plan's assets grew over the two-year period in which the Plan's

26  administrative services costs were defrayed out of asset-based fees render this arrangement

27  unreasonable.  To the contrary, the fact that the Plan fiduciaries renegotiated the arrangement to

28

11

DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

1   specify a per-participant fee after just two years shows that they were diligently monitoring

2   recordkeeping fees to ensure that they did not become unreasonable. *See* Compl. ¶ 86. Since

3   plaintiffs allege nothing else to show that the recordkeeping fees Vanguard received were

4   unreasonable, their claim for excessive recordkeeping fees is not plausible and must be dismissed.

5   *Iqbal*, 556 U.S. at 678.

6         Further, plaintiffs' allegation that the Plan fiduciaries were required to solicit competitive

7   bids on a regular basis has no legal foundation. Indeed, they admit that nothing in ERISA

8   compels periodic competitive bidding. Opp'n at 21:28–22:3. Plaintiffs urge that such a

9   requirement may be found in *George v. Kraft Foods Global, Inc.*, 641 F.3d 786 (7th Cir. 2011),

10  *see* Opp'n at 22:1–3, but *George* held that the failure to solicit competitive bids might be

11  imprudent where (1) plaintiffs presented concrete evidence about the objective level of fees and

12  why they were unreasonable; and (2) the plan fiduciaries had not renegotiated their recordkeeping

13  arrangement for more than fifteen years. *George*, 641 F.3d at 798–99. Neither of these indicia of

14  imprudence is present here. Plaintiffs have presented no concrete allegations suggesting that the

15  Plan fiduciaries could have obtained less-expensive recordkeeping services, and they allege, in

16  contrast to the facts at issue in *George*, that Plan fiduciaries ***did*** renegotiate their recordkeeping

17  arrangement with Vanguard to limit compensation to annual, per-participant fees. Moreover,

18  plaintiffs do not challenge those renegotiated fees as unreasonable. Count III must be dismissed.

19        **E.**    **Plaintiffs Fail To State A Claim That Defendants Inadequately Monitored**

20                  **The Artisan Small Cap Value Fund.**

21        In Count IV, plaintiffs contend that the failure to remove the Artisan Small Cap Value

22  Fund as a Plan option earlier was self-evidently imprudent. *E.g.*, Compl. ¶¶ 98, 127. But as

23  defendants explained in their motion, plaintiffs' own allegations establish that the Plan fiduciaries

24  were attentively monitoring the Fund—after all, they ***removed it***, and while the Fund was still

25  outperforming its benchmark on a long-term trailing basis.[9] Mot. at 24:1–12. As defendants also

---

[9] The Plan exited the Artisan Fund early relative to other institutional investors, *see* Mot. at 24:6–12, and plaintiffs are wrong to suggest otherwise. Net assets of the Fund's institutional shares as of September 30, 2014, six months after the Plan exited the Fund, were $306,638,000. Vergara
(*footnote continued next page*)

1   explained, plaintiffs allege nothing to suggest the fiduciaries waited too long to do so, having

2   relied in the Complaint on a distorted characterization of the Fund's performance that included a

3   substantial period *after* the Fund's removal.  Mot. at 23:17–26.  Plaintiffs themselves now

4   recognize that the period of "consistent[]" underperformance did not begin until "around 2012,"

5   and further admit that the fiduciaries' removal of the Artisan Fund shows "the possibility that . . .

6   some process . . . ultimately led to the removal of" the Fund.  Opp'n at 24:16–21.[10]

7           There is now simply nothing left of this claim.  While plaintiffs insist that two years of

8   underperformance on a short- and mid-term trailing basis—even with a monitoring process in

9   place—is enough to state a plausible claim of imprudence, that standard would foreclose the

10  common and prudent fiduciary practice of refraining from making investment decisions based on

11  short-term performance gyrations.  *See*, *e.g.*, *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006)

12  (three straight years of losses alone "is not evidence that [defendant] violated his fiduciary duty").

13  Neither does plaintiffs' hyperbolic description of the alleged magnitude of the Artisan Fund's

14  underperformance advance their claim, as "an allegation that an investment's price dropped, even

15  precipitously, does not alone suffice to state a claim under ERISA."  *St. Vincent*, 712 F.3d at 721–

16  22.[11]  Plaintiffs claim that the Plan fiduciaries cannot avoid dismissal without elaborating on the

17  process they applied in removing the Artisan Fund, but it is sufficient that plaintiffs themselves

18  concede that the process existed; it is not defendants' burden to confirm as much in discovery.

19  Plaintiffs' Count IV should be dismissed with prejudice.

20

21

22

23  ─────────────────────────────────

    Decl., Ex. T, Doc. 27-21 at 16.  One year later, institutional shares had decreased nearly tenfold,

24  to $34,513,000.  *Id.*

    [10] Plaintiffs inexplicably advance a different argument that attempts to hold Plan fiduciaries

25  accountable for the performance of the Artisan Fund *after* its removal, alleging that the Fund

26  suffered from "poor performance in 4 of the 5 preceding years," with reference to nearly a year of

    performance after the Fund was no longer a Plan investment.  Opp'n at 23:16–18.

27  [11] Plaintiffs labor, unsuccessfully, to distinguish *St. Vincent*.  The case enunciates general ERISA

    principles, not a special rule of pleading for "insider" plaintiffs.  *St. Vincent*, 712 F.3d at 718–19.

28

DEFS.' REPLY ISO MOT. TO DISMISS
                                    CASE NO. 4:16-CV-00793-PJH

1

**F.**      **Plaintiffs Admit That Their "Failure To Monitor Fiduciaries" Claim Lacks Substance.**

2

3      Plaintiffs lack a substantive response to defendants' argument that plaintiffs' derivative

4 failure to monitor fiduciaries claims must be dismissed.  Instead, plaintiffs admit that they cannot

5 allege this claim with facts but assert they ought to be given the opportunity to explore it in

6 discovery.  Opp'n at 25:2–7.  As already discussed, federal pleading standards require more.  An

7 ERISA plaintiff may lack direct evidence of the fiduciaries' process, but must nevertheless at

8 least make factual allegations that give rise to a "***reasonable*** inference" that the defendant

9 committed the alleged violation.  *St. Vincent*, 712 F.3d at 718 (emphasis in original) (quoting

10 *Iqbal*, 556 U.S. at 678).  Plaintiffs do not even try to meet this standard.  Count V should thus

11 also be dismissed without leave to amend.

12 **IV.**      **CONCLUSION**

13      For the reasons stated above and in defendants' underlying motion, plaintiffs' Complaint

14 should be dismissed in its entirety, with prejudice.

15      Dated: May 31, 2016            M. RANDALL OPPENHEIMER

16                                     BRIAN D. BOYLE
   CATALINA J. VERGARA
17                                     O'MELVENY & MYERS LLP

18                                     By:  /s/ *Catalina J. Vergara*
                                          Catalina J. Vergara

19                                     Attorneys for Defendants

20                                     CHEVRON CORPORATION and
   CHEVRON CORPORATION ESIP
21                                     INVESTMENT COMMITTEE

22

23

24

25

26

27

28

14