UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES E WHITE, et al.,

         Plaintiffs,

    v.

CHEVRON CORPORATION, et al.,

         Defendants.

Case No.  16-cv-0793-PJH

**ORDER GRANTING MOTION TO DISMISS**

    Defendants' motion to dismiss the complaint in the above-entitled action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim came on for hearing before this court on June 22, 2016.  Plaintiffs appeared by their counsel Heather Lea, Jamie Dupree, Michael Wolff, and James Redd, and defendants appeared by their counsel Catalina Vergara and Sharon Bunzel.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion as follows.

## BACKGROUND

    Plaintiffs commenced this proposed class action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., on February 17, 2016.  The underlying purpose of ERISA is to "protect the interests of participants in employee benefit plans and their beneficiaries."  Schikore v. Bankamerica Supplemental Retirement Plan, 269 F.3d 956, 963 (9th Cir. 2001) (citing 29 U.S.C. § 1001(b).  Plaintiffs allege claims of breach of fiduciary duty under ERISA § 502(a), 29 U.S.C. § 1132(a).

ERISA § 404(a)(1) imposes several duties on plan fiduciaries.  See 29 U.S.C. § 1104(a)(1).  "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[ ] and defraying reasonable expenses of administering the plan[,]" and must discharge their duties "solely in the interests of the participants and beneficiaries."  See 29 U.S.C. § 1104(a)(1)(A).  In addition, fiduciaries must use "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  Id. § 1104(a)(1)(B).

"These responsibilities imposed by ERISA have the familiar ring of their source in the common law of trusts[,]" Pegram v. Hedrich, 530 U.S. 211, 224 (2000), and courts accordingly look to the law of trusts "[i]n determining the contours of an ERISA fiduciary's duty," Tibble v. Edison Int'l, 135 S.Ct. 1823, 1828 (2015) ("Tibble II").

Plaintiffs are six participants in the Chevron Employee Savings Investment Plan ("the Plan" or "ESIP Plan").  The purposes of the Plan are to provide eligible employees the opportunity to share in the profits and ownership of Chevron Corporation.  ESIP Plan, Exh. D. to Declaration of Catalina J. Vergara ("Vergara Decl."), at 2.  Portions of the Plan are intended to qualify as a profitsharing plan under § 401(a) of the Internal Revenue Code, as a qualified cash or deferred arrangement under § 401(k) of the Code, and as a stock bonus and employee stock ownership plan ("ESOP") under §§ 401(a) and 4975(e)(7) of the Code.  Id.; see also Complaint ("Cplt") ¶¶ 1-3, 7, 12-17.

As of December 31, 2014, the Plan had more than $19 billion in total assets and over 40,000 participants with account balances.  Cplt ¶ 11.  Plaintiffs "bring this action . . . on behalf of the Plan against [d]efendants."  Cplt ¶ 1; see also Cplt ¶ 3 (plaintiffs seek to "enforce [d]efendants' personal liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty and restore to the Plan any profits made through [d]efendants' use of the Plan's assets").

United States District Court
Northern District of California

1   Defendants are Chevron Corporation, the Chevron Investment Committee

2   ("Investment Committee"), and 20 DOEs (collectively, "Chevron" or "defendants").  Cplt

3   ¶¶ 18-23.  Chevron Corporation is the Plan Sponsor and Plan Administrator, and is the

4   sole named fiduciary of the Plan, with the authority to control and manage the operation

5   of the Plan.  Cplt ¶ 18.  The Plan provides that Chevron Corporation may designate one

6   or more actuaries, accountants, or consultants as fiduciaries to carry out its

7   responsibilities under the Plan.  Cplt ¶ 19.  Any of those duties and responsibilities that

8   have not been delegated are carried out by Chevron Corporation's officers, directors, and

9   employees, including the Investment Committee.  See Cplt ¶ 5.

10  The Investment Committee is comprised of representatives from Chevron

11  Corporation's Treasury Department.  See November 2015 Investment Policy Statement

12  ("IPS"), Exh. J to Vergara Decl., at 3.  The Investment Committee is responsible for

13  establishing and maintaining the Plan's IPS, which defines the Plan's investment

14  objectives, and provides criteria for selecting, monitoring, and removing the Plan's

15  investment options.  Cplt ¶ 20; see Exh. J to Vergara Decl., at 1.  The members of the

16  Investment Committee are the General Manager of Benefit Plan Investments, the

17  Manager of Reporting and Control, and the Investment Strategist from Chevron

18  Corporation's Treasury Department.  Cplt ¶ 20; Exh. J to Vergara Decl. at 3.  Plaintiffs

19  allege that while the Investment Committee is not named a fiduciary in the Plan

20  document, it is a fiduciary to the Plan under 29 U.S.C. § 1002(21)(A) because it has and

21  exercises discretionary authority and control over the administration of Plan investments

22  and investment-related expenses.  Cplt ¶ 21.

23  As alleged in the complaint, Chevron Corporation through the Investment

24  Committee determined the Plan participants' investment options.  Cplt ¶ 25.  During the

25  proposed class period, which began on February 17, 2010, the Plan offered a variety of

26  options in which participants could invest their retirement assets.  As of December 31,

27  2014, participants had a choice of 12 Vanguard mutual funds, 12 Vanguard collective

28  trust target date funds, a Vanguard money market fund, 3 non-Vanguard mutual funds, a

United States District Court
Northern District of California

1   Dodge & Cox fixed income separate account, a State Street collective trust, and a

2   Chevron common stock fund.  See Cplt ¶ 26.  Participants could also allocate funds in

3   their accounts among investments made through a brokerage option.  See Exhs. E-I to

4   Vergara Decl.

5        Plaintiffs assert that defendants breached their duties of loyalty and prudence in

6   choosing some of these investment options.  Specifically, they allege that defendants

7   breached their duties of loyalty and prudence by providing participants with a money

8   market fund as a capital preservation option, instead of offering them a stable value fund;

9   by providing "retail" investment options that charged higher management fees than lower-

10  cost "institutional" versions of the same investments; by providing mutual funds that

11  charged higher management fees than other lower-cost investment options such as

12  collective trusts and separate accounts; by failing to put Plan administrative services out

13  for competitive bidding on a regular basis, and instead paying excessive administrative

14  fees to Vanguard as recordkeeper through revenue sharing from Plan investment

15  options; and by retaining the Artisan Small Cap Value Fund (ARTVX) as an investment

16  option despite its underperformance compared to its benchmark, peer group, and lower-

17  cost investment alternatives.  Plaintiffs also allege that Chevron Corporation breached its

18  fiduciary duty by failing to monitor its appointees' performance and fiduciary process,

19  failing to ensure that the appointees had a fiduciary process in place, and failing to

20  remove appointees whose performance was inadequate.

21       The gist of the complaint is that the value of the proposed class members'

22  retirement accounts would have been greater had defendants chosen alternative funds or

23  investment options with either higher returns or lower administrative and management

24  fees (or both), and that based on the alleged breaches of fiduciary duty, defendants are

25  personally liable to make good to the Plan any losses resulting from their failure to

26  choose investment options with higher returns and/or lower fees.

27       The complaint asserts five causes of action.  These are (1) a claim of breach of

28  the duties of loyalty and prudence, and violation of the IPS, in connection with

1   defendants' selection of a money market fund instead of a "stable value fund;" (2) a claim

2   of breach of the duties of loyalty and prudence, based on unreasonable investment

3   management fees; (3) a claim of breach of the duties of loyalty and prudence, based on

4   excessive administrative fees charged by the Vanguard Group, Inc., designated the

5   Plan's recordkeeper; (4) a claim of breach of the duties of loyalty and prudence, and

6   violation of IPS, based on alleged delay in removing the ARTVX Fund from the

7   investment menu; and (5) a claim of breach of fiduciary duty based on Chevron

8   Corporation's alleged failure to monitor fiduciaries.  See Cplt ¶¶ 113-135.

9        Defendants now seek an order dismissing the complaint pursuant to Federal Rule

10  of Civil Procedure 12(b)(6) for failure to state a claim.

**DISCUSSION**

12  A.    Legal Standard

13       A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

14  alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

15  Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8,

16  which requires that a complaint include a "short and plain statement of the claim showing

17  that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be

18  dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or

19  has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple,

20  Inc., 729 F.3d 953, 959 (9th Cir. 2013).

21       While the court is to accept as true all the factual allegations in the complaint,

22  legally conclusory statements, not supported by actual factual allegations, need not be

23  accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis.

24  Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).  The complaint must proffer sufficient

25  facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly,

26  550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).  A claim has facial

27  plausibility when the plaintiff pleads factual content that allows the court to draw the

28  reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

United States District Court
Northern District of California

U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679.  Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  Thus, the court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims.  See No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

B.    Defendants' Motion

Defendants argue that the duty of loyalty claims must be dismissed because plaintiffs allege no facts from which disloyalty can be inferred; that there is no requirement that an ERISA plan offer a stable value fund, and that plaintiffs plead no facts showing that inclusion of the money market fund was imprudent; that plaintiffs plead no facts showing that the Plan fiduciaries were imprudent in their selection of the remaining investment options; that plaintiffs do not plausibly allege any imprudence in the Plan's revenue-sharing arrangement with Vanguard; that there was no imprudence in the timing of the removal of the ARTVX Fund; and that the monitoring claim fails.

1.    Claims of breach of duty of loyalty

In the first through fourth causes of action, plaintiffs allege that defendants breached their fiduciary duties of "loyalty and prudence."  See Cplt ¶¶ 114, 118, 122, 126.

1  Defendants argue that the claims of breach of loyalty must be dismissed because
2  plaintiffs allege no facts from which disloyalty can be inferred.

3          As noted above, ERISA imposes on plan fiduciaries an obligation to act "solely in
4  the interest of the participants and beneficiaries" and "for the exclusive purpose of . . .
5  providing benefits to participants and their beneficiaries."  29 U.S.C. § 1104(a)(1)(A).
6  This requires that plan fiduciaries make decisions "with an eye single to the interests of
7  the participants and fiduciaries."  See Donovan v. Bierwirth, 680 F.2d 263, 271 (2nd Cir.
8  1982), quoted in Pegram, 530 U.S. at 235.  Here, defendants assert, the complaint fails
9  to allege facts sufficient to create a plausible inference that the Plan fiduciaries
10  discharged their duties with anything other than complete loyalty as required by
11  § 1104(a)(1)(A).

12          Defendants contend that the allegations regarding defendants' selection of a
13  money market fund instead of a stable value fund (first cause of action), regarding the
14  Plan's administrative and investment-management expenses (second and third causes of
15  action), and regarding the replacement of the ARTVX Fund (fourth cause of action) are
16  "prudence" challenges, with no facts pled showing that defendants acted in the interest of
17  anyone other than the Plan participants and beneficiaries, much less that they acted in
18  the interest of Chevron or other Plan fiduciaries.  In short, defendants assert, plaintiffs
19  cannot proceed with a claim of disloyalty simply by virtue of having attached a "disloyalty"
20  label to the complaint.

21          In opposition, plaintiffs assert that the duty of loyalty is not limited to a prohibition
22  against self-dealing, but rather that it also includes a duty to cause the Plan to incur only
23  reasonable expenses.  They contend that the complaint alleges facts showing that
24  defendants caused the Plan to incur unreasonable expenses for management and
25  administrative services, thereby asserting breach of the duty of loyalty.

26          The court finds that the claims alleging breach of the duty of loyalty must be
27  dismissed.  Plaintiffs cite no authority in support of the proposition that causing an ERISA
28  Plan to incur unreasonable expenses is a breach of the duty of loyalty, distinct from a

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1  breach of the duty of prudence.  Nor does the complaint include such an assertion.  The

2  complaint simply alleges that defendants violated the "duties of loyalty and prudence" by

3  offering a money market fund instead of a stable value fund, by offering higher-cost funds

4  rather than less expensive funds, and by retaining the ARTVX Fund notwithstanding its

5  underperformance.  See Cplt ¶¶ 114, 118, 122, 126.

6          Although ERISA § 404(a)(1) does not use the terms "duty of prudence" and "duty

7  of loyalty," the statute does differentiate between the two, as set forth in 29 U.S.C.

8  § 1104(a)(1), subparts (A) and (B).  Because the law of trusts is relevant to "determining

9  the contours of an ERISA fiduciary's duty," Tibble II, 135 S.Ct. at 1828, the definition in

10  the Restatement, Third, of Trusts is instructive, with regard to the duty of loyalty:

> (1) Except as otherwise provided in the terms of the trust, a trustee has a duty to administer the trust solely in the interest of the beneficiaries, or solely in furtherance of its charitable purpose.

> (2) Except in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests.

> (3) Whether acting in a fiduciary or personal capacity, a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter.

19  Restatement (Third) of Trusts § 78 (2007).

20          Here, the complaint pleads no facts sufficient to raise a plausible inference that

21  defendants took any of the actions alleged for the purpose of benefitting themselves or a

22  third-party entity with connections to Chevron Corporation, at the expense of the Plan

23  participants, or that they acted under any actual or perceived conflict of interest in

24  administering the Plan.  Instead, plaintiffs simply allege in the first through fourth causes

25  of action that "Chevron breached its duties of loyalty and prudence" under

26  § 1104(a)(1)(A) & (B).  See Cplt ¶¶ 114, 118, 122, 126.

27          Nor do plaintiffs in their opposition point to any facts suggesting that the Plan

28  fiduciaries engaged in self-dealing or failed to act "solely in the interest" of the Plan's

United States District Court
Northern District of California

1   participants, or identify any facts plaintiffs could add to state a claim for breach of the duty

2   of loyalty.  Because the complaint does not differentiate between breach of the duty of

3   prudence and breach of the duty of loyalty, and includes no separate allegations to

4   support the duty of loyalty claim, the court finds the allegations in the complaint

5   insufficient to sustain the disloyalty claim.  See Romero v. Nokia, 2013 WL 5692324 at *5

6   (N.D. Cal. Oct. 15, 2013).

7           2.      Claims of breach of duty of prudence

8           ERISA imposes on fiduciaries a duty to act prudently "under the circumstances

9   then prevailing."  29 U.S.C. § 1104(a)(1)(B); see also Tibble II, 135 S.Ct at 1828 (citing

10  Fifth Third Bancorp v. Dudenhoeffer, 134 S.Ct. 2459 (2014)).  This standard "focus[es] on

11  a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s]

12  whether a fiduciary employed the appropriate methods to investigate and determine the

13  merits of a particular investment."  Pension Benefit Guar. Corp. ex rel. St. Vincent v.

14  Morgan Stanley Inv. Mgmt., 712 F.3d 705, 716 (2nd Cir. 2012) (citation and quotation

15  omitted).

16          Plaintiffs allege that defendants breached the duty of prudence in four ways – by

17  failing to offer Plan participants the option of investing in a stable value fund in place of

18  (or in addition to) a money market fund; by providing funds with unreasonably high

19  management fees; by entering into a revenue-sharing agreement with Vanguard,

20  designated as the Plan's recordkeeper, which caused the Plan to incur unreasonably

21  high administrative fees; and by unduly delaying in removing the ARTVX Fund as an

22  investment option.  See Cplt ¶¶ 27-99.

23                  a.      Claim alleging failure to offer stable value fund

24          In the first cause of action, plaintiffs challenge defendants' choice of a money

25  market fund to serve as the Plan's capital conservation option, asserting that this choice

26  was imprudent and also violated the Plan's IPS, and that defendants should have

27

28

United States District Court
Northern District of California

1    provided a stable value fund as an investment option.  See Cplt ¶¶ 27-38, 114.[1]  Both

2    money market funds and stable value funds are considered conservative investments, in

3    that they emphasize capital preservation rather than maximization of returns.  See Tibble

4    v. Edison Int'l, 729 F.3d 1110, 1136 (9th Cir. 2013)  ("Tibble I") (noting conservative

5    objectives of short-term investment funds – similar to traditional money market funds –

6    and stable value funds), vacated on other grounds, 135 S.Ct. 1823 (2015).

7         Among the duties ascribed to the Investment Committee by the IPS is the duty of

8    "understanding the risk and return characteristics of each investment option" presented in

9    the Plan.  IPS, Exh. J to Vergara Decl. at 3.  The "investment objectives" stated in the IPS

10   include "offer[ing] a variety of funds (investment options) that allow Members and

11   Beneficiaries to construct an efficient investment portfolio across a broad risk/return

12   spectrum to achieve their own investment goals, time horizons and risk tolerances"

13   including the provision that "[a]t least one fund will provide for a high degree of safety and

14   capital appreciation."  Cplt ¶ 31; Exh. J to Vergara Decl. at 5.  The IPS also describes

15   nine "investment categories and options" selected by the Committee, which includes

16   "short-term investment(s)" that "provide [m]embers and [b]eneficiaries with investment

17   options that seek maximum current income that are consistent with preservation of

18   capital and liquidity."  Exh. J to Vergara Decl. at 5-6.

19        Although neither ERISA nor the IPS mandates inclusion of a stable value fund,

20   plaintiffs strongly suggest that defined contribution plans are required to offer stable value

21   funds as capital preservation options.  See Cplt ¶ 31 (stable value funds meet the

22   fiduciary standards set forth in 29 U.S.C. § 1104(a)(1) and the IPS, and "[m]oney market

23   funds do not, because they provide a minimal return and no guaranteed interest rate");

24

---

25   [1]   According to the complaint, a stable value fund consists of a pool of fixed-income
     securities (primarily bonds) that is managed by a group of insurance companies and/or
26   banks that provide a guaranty of principal and accrued interest and a steady, relatively
     high income stream.  See Cplt ¶¶ 27-28 (citing Abbott v. Lockheed Martin Corp., 725
27   F.3d 803, 806 (7th Cir. 2013); Paul J. Donahue, Plan Sponsor Fiduciary Duty for the
     Selection of Options in Participant-Directed Defined Contribution Plans and the Choice
28   Between Stable Value and Money Market, 39 Akron L. Rev. 9, 20-22, 24 (2006)).

United States District Court
Northern District of California

Cplt ¶ 32 (despite requirements of IPS, "Chevron failed to offer a stable value fund that would have provided participants the 'maximum current income' while preserving capital and liquidity without any greater increase in risk compared to money market investments"); id. (standards set forth in IPS "are the standards applicable to a loyal and prudent fiduciary under ERISA's fiduciary standards" and "[s]table value funds meet these requirements . . . and the IPS's standards of a loyal and prudent fiduciary").

Defendants contend that the first cause of action must be dismissed for failure to state a claim because ERISA does not require employee benefit plans to offer a stable value fund.  Defendants contend that notwithstanding that the chosen money market fund succeeded in preserving invested principal and providing returns on the principal consistent with short-term interest rates, plaintiffs are now alleging, in hindsight, that a stable value fund would have delivered higher returns during the alleged class period, and that the relatively modest returns they received from the money market fund option did not justify its use in a 401(k) plan.

Defendants assert, however, that the Ninth Circuit in Tibble I rejected the contention that "it was imprudent for [a plan fiduciary] to include a short-term investment fund" – akin to a money market fund – "rather than a stable value fund" in a 401(k) plan lineup.  See id., 729 F.3d at 1136.  Defendants also point to the Seventh Circuit's decision in Hecker v. Deere & Co., 556 F.3d 575 (7th Cir. 2009), where the court found that "nothing in [ERISA] requires plan fiduciaries to include any particular mix of investment vehicles in their plan."  Id. at 586.

Defendants argue that in Tibble I, as here, the plaintiffs attempted to establish the imprudence of the fiduciaries' investment choice based on hindsight outcomes.  The Ninth Circuit's response was that in evaluating the prudence of an investment decision, "the primary question is whether the fiduciaries, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment."  Id., 729 F.3d at 1136 (citing Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co., 259 F.3d 1036, 1043 (9th Cir.

11

2001)).  Because evidence in that case showed that the investment team discussed "the pros and cons of a stable-value alternative" before opting for a short-term investment fund alternative, the plaintiffs' fiduciary breach claim failed.  Id.

Here, defendants assert, plaintiffs make the conclusory assertions that in monitoring the Plan investments, "Chevron failed to weigh the benefits of a stable value fund compared to the Vanguard Prime Money Market Fund or come to a reasoned decision as to why providing the Vanguard Prime Money Market Fund was in compliance with the IPS, . . . and . . . failed to remove the imprudent Vanguard Prime Money Market Fund as a Plan investment option."  Cplt ¶ 37.  However, defendants argue, plaintiffs plead no facts sufficient to show that the fiduciaries did not use reasoned decision-making to select a money market option instead of a stable value option.  They contend that plaintiffs are in essence asking this court to infer an imprudent process from the decision itself.

In opposition, plaintiffs assert that the complaint alleges facts sufficient to state a claim of breach of the duty of prudence in connection with defendants' choice of a money market fund over a stable value fund.  They argue that while stable value funds and money market funds both have the objective of preserving capital, stable value funds provide a relatively stable rate of return that generally exceeds the returns provided by money market funds.  Plaintiffs also contend that stable value funds are not available to common retail investors, but are instead designed for large retirement plans to provide liquidity and preservation of capital similar to money market funds but with greater income.  Consequently, they contend, a majority of large 401(k) plans offer a stable value fund as an investment option.

Plaintiffs point to allegations that instead of providing participants a stable value fund as the Plan's low-risk, liquid investment, defendants provided the Vanguard Prime Money Market Fund, initially in the higher-cost Investor class and then, as of April 2012, in the lower-cost Institutional class.  See Cplt ¶ 33.  They assert that in the past six years this money market fund provided low annual return (0.04% - 0.07%), which did not even

beat the rate of inflation, even though a stable value fund could potentially have returned considerably more (1.32%-3.12%).  See Cplt ¶¶ 34-35.  Plaintiffs agree that the IPS does not mandate a stable value fund, but they argue that because it does mandate "maximum current income . . . consistent with preservation of capital and liquidity," a prudent fiduciary would necessarily have either provided a stable value fund or come to a reasoned decision as to why a lower-yielding but no safer money market fund is and remains a prudent option for the Plan.

Plaintiffs contend that they are not alleging in the first cause of action that the act of providing a money market fund was in itself a breach of fiduciary duty, but rather that the returns on stable value funds are higher, and that money market funds are not necessarily "risk-free."  For example, plaintiffs assert, stable value funds weathered the 2008 financial crisis better than money market funds did.  Plaintiffs argue that in view of the Plan's large asset level (over $19 billion) and access to a stable value fund designed specifically for the Plan and the apparent superiority of stable value funds to money market funds in terms of risk of loss, liquidity, and income, it is "beyond plausible" that defendants did not balance those factors or come to a reasoned decision for their actions in the past six years.

The court finds that the complaint does not allege sufficient facts to show a breach of the duty of prudence in connection with defendants' selection of the money market fund as the "capital preservation option."  Offering a money market fund as one of an array of mainstream investment options along the risk/reward spectrum more than satisfied the Plan fiduciaries' duty of prudence.  See Loomis v. Exelon, 658 F.3d 667, 673-74 (7th Cir. 2011) (dismissing investment lineup challenge, noting that a fiduciary that "offer[s] participants a menu that includes high-expense, high-risk, and potentially high-return funds, together with low-expense index funds that track the market, and low-expense, low-risk, modest-return bond funds . . . has left choice to the people who have the most interest in the outcome, and it cannot be faulted for doing this").

The IPS provides that "[a]t least one fund will provide for a high degree of safety

13

and capital preservation," directs that all Plan options must be liquid and daily-valued, and promotes participant flexibility in allocating their accounts.  See Vergara Decl., Ex. J (IPS) at 1, 5.  The inclusion of a money market option is consistent with the IPS guidance, and plaintiffs' attempt to infer an imprudent process from its offering is therefore implausible.

Plaintiffs concede that neither ERISA nor the IPS required that the Plan include a stable value fund, do not dispute that some defined contribution plans include money market funds, that some include stable value funds, and that some include both money market funds and stable value funds.  Nevertheless, they take the position that it was imprudent for the Plan fiduciaries fail to consider including a stable value fund.  However, plaintiffs plead no facts showing that the Plan fiduciaries failed to evaluate whether a stable value fund or some other investment option would provide a higher return and/or failed to evaluate the relative risks and benefits of money market funds vs. other capital preservation options.

A complaint that lacks allegations relating directly to the methods employed by the ERISA fiduciary may survive a motion to dismiss only "if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed."  See St. Vincent, 712 F.3d at 718 (quotation omitted).  No such inference can be made in this case.  Under Iqbal, 556 U.S. at 678, the plausibility standard asks for more than a sheer "possibility" that a defendant has acted unlawfully. Without some facts that raise an inference of imprudence in the selection of the money market fund – apart from the fact that stable value funds may provide a somewhat higher return than money market funds – plaintiffs have failed to state a claim.

Finally, plaintiffs' focus on the relative performance of stable value and money market funds over the last six years is an improper hindsight-based challenge to the Plan fiduciaries' investment decision-making.  A fiduciary's actions are judged "based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight."  St. Vincent, 712 F.3d at 716; see also DeBruyne v.

14

1  Equitable Life Assurance Soc'y of U.S., 920 F.2d 457, 465 (7th Cir. 1990) (ERISA

2  "requires prudence, not prescience") (quotation omitted).

3              b.    Claim asserting that defendants provided funds with excessive

4                    management fees

5      In the second cause of action, plaintiffs assert that defendants imprudently

6  provided Plan participants with investment options in the form of funds that charged

7  unreasonable management fees.  Cplt ¶¶ 39-77, 117-120.  This cause of action

8  challenges the defendants' decisions with regard to the selection and maintenance of the

9  Plan's mix and range of investment options.

10     Plaintiffs allege (1) that the fiduciaries imprudently chose to offer certain retail-

11  class shares of mutual funds (both Vanguard and non-Vanguard) when cheaper

12  institutional-class shares were available, see Cplt ¶¶ 44-55; (2) that the fiduciaries

13  imprudently included a few non-Vanguard funds in the mix when they could have offered

14  a cheaper, all-Vanguard lineup, see Cplt ¶¶ 56-59; and (3) that the fiduciaries chose to

15  offer mutual funds (with excessive fees) when they could have reduced investment

16  management expenses by using alternative investments structured as separate accounts

17  or collective trusts, see Cplt ¶¶ 60-77.

18     Defendants argue that the second cause of action must be dismissed because

19  plaintiffs have pled no facts sufficient to state a claim that the Plan fiduciaries were

20  imprudent in their selection of the Plan's investment options.  First, defendants contend

21  that the fiduciaries' choice of retail-class mutual funds – instead of institutional funds –

22  was not improper, as a fiduciary is not required to offer only wholesale or institutional

23  funds, and indeed, retail-class funds can have advantages over their institutional-class

24  counterparts.

25     Moreover, defendants assert, plaintiffs have alleged that several institutional class

26  funds were included in the Plan lineup in 2010, see, e.g., Cplt  ¶ 47 (showing several

27  institutional-class Vanguard funds in the Plan); Cplt ¶ 53 ("Chevron provided the lowest-

28  cost share class of the American Funds EuroPacific Growth Fund since February 2010");

United States District Court
Northern District of California

1   and that the fiduciaries continuously re-evaluated whether to switch to cheaper

2   institutional share classes, see, e.g., Cplt ¶ 48 ("Chevron moved to lower-cost share

3   classes for the Vanguard mutual funds in 2012"), or to eliminate higher-fee funds

4   altogether, see, e.g., Cplt ¶¶ 49–51.

5        Second, defendants assert that the facts pled in the complaint do not show that

6   the fiduciaries acted imprudently in offering non-Vanguard funds to complement the

7   lineup's array of Vanguard options, even though the fees for the Vanguard funds might

8   have been higher.  Defendants contend that fiduciaries have latitude to value investment

9   features other than price (and indeed, are required to do so).

10       Third, defendants contend that it was not imprudent for the Plan fiduciaries to

11  include mutual funds on the Plan lineup, rather than structuring the investments as

12  separate accounts and collective trusts.  Defendants argue that plaintiffs' theory has been

13  rejected by the Ninth Circuit, see Tibble I, 729 F.3d at 1134-35, and the Seventh Circuit,

14  see Hecker, 556 F.3d at 586, and Loomis, 658 F.3d at 671-72.

15       In opposition, plaintiffs argue that the facts alleged show that because the Plan

16  had over $19 billion in assets, it had substantial bargaining power to demand low fees for

17  investment management services, but that rather than using the Plan's bargaining power,

18  defendants provided Plan investment options with far higher expenses than institutional

19  investment vehicles that plaintiffs claim were readily available based on the Plan's size.

20       Second, plaintiffs contend that the complaint alleges facts sufficient to state a

21  claim that defendants breached the duty of prudence by providing Plan participants with

22  fund options (both Vanguard and non-Vanguard funds) with excessive management fees.

23       Third, plaintiffs argue that the facts alleged show that defendants could have

24  offered separately managed accounts that would have provided numerous benefits to

25  Plan participants over retail mutual funds, and could have negotiated with the investment

26  advisers of the Plan's five actively managed mutual funds for separate account

27  management at an even lower cost than those advisers' lowest mutual fund fees.

28  However, plaintiffs assert, "[t]hey apparently did not even try."

United States District Court
Northern District of California

Plaintiffs assert further that defendants provided participants with an S&P 500®
index investment in a Vanguard mutual fund even though they could have opted for the
same investment in a lower-cost Vanguard collective trust; and that the target retirement
date asset allocation investments that were offered in a collective trust could have been
offered in a lower-cost version.  Again, plaintiffs assert, "[d]efendants apparently never
inquired about these lower cost options, and have provided no reasonable basis for
rejecting them."

Based on the above, plaintiffs argue that the second cause of action states a valid
claim of breach of the duty of prudence.  Plaintiffs contend that merely by offering an
"array" of investment options, with a range of fees, fiduciaries do not become immune
from claims of breach as to particular instruments, and argue that Hecker, Loomis, and
Renfro do not stand for that proposition.  Instead, plaintiffs assert, those courts carefully
limited their decisions to the facts presented.  For example, plaintiffs argue, Hecker held
that the plaintiffs in that case never alleged that any of the 26 investment alternatives
offered through the 401(k) plan at issue was unsound or reckless.

Plaintiffs argue that unlike Hecker, where the court noted that "nothing in
ERISA requires every fiduciary to scour the market to find and offer the cheapest
possible fund (which might, of course, be plagued by other problems)," id., 556 F.3d at
586, the complaint in the present case does not assert that all retail mutual funds are
imprudent per se and does not vaguely allege that some alternative might have been
cheaper but plagued by other problems.  Instead, plaintiffs contend, their position is that
defendants could have provided the exact same investment at a lower cost – either
through cheaper share classes, collective trusts, or separate accounts, or by hiring the
same mutual fund advisers.  Plaintiffs assert that these preferred alternatives are "readily
available to attentive, loyal, and prudent fiduciaries knowledgeable in this area and the
exact same investment option could not be plagued by other problems."

Plaintiffs contend that as for defendants' assertion that they satisfied their duties
by investing in Vanguard mutual funds – given that Vanguard is recognized as a leader in

17

providing low-cost mutual funds – defendants have ignored the fact that Vanguard provided different versions of the exact same investment, and that the versions differed based on cost and who could invest in them.  Plaintiffs' contention is that defendants provided the more expensive version, even though this $19 billion Plan was "qualified" for the least expensive version.

As with other arguments regarding the claims of breach of the duty of prudence, plaintiffs cite Tussey v. ABB, Inc., 746 F.3d 327 (8th Cir. 2014) and Braden v. Wal-Mart Stores, Inc., 588 F.3d 585 (8th Cir. 2009), for the proposition that factual disputes cannot be resolved on a 12(b)(6) motion to dismiss.  See Tussey, 746 F.3d at 336 (the question whether an ERISA fiduciary breached its duties is "inevitably fact intensive"); Braden, 588 F.3d at 596-98 (court cannot expect plaintiffs to plead specific facts about defendants' fiduciary processes because those facts are not disclosed and tend to be in the sole possession of defendants).  Accordingly, plaintiffs assert, dismissal of claims of breach of fiduciary duty is rarely appropriate in the absence of a factual record.

The court finds that the second cause of action fails to state a claim.  In order to withstand a motion to dismiss, the complaint must allege facts sufficient to give rise to a "reasonable inference" that the Plan fiduciaries engaged in conduct constituting a breach of fiduciary duty.  See St. Vincent, 712 F.3d at 718-19.  While the court is required, for purposes of this motion, to take the factual allegations in the complaint as true, the court is not "bound to accept as true a legal conclusion couched as a factual allegation."  See Iqbal, 556 U.S. at 678.  That is, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678-79.  Only a complaint that pleads sufficient facts to state a plausible claim for relief will survive a motion to dismiss.  See id.

Fiduciaries have latitude to value investment features other than price (and indeed, are required to do so), as recognized by the courts.  See Hecker, 556 F.3d at 586; Loomis, 658 F.3d at 670; Renfro v. Unisys Corp., 671 F.3d 314, 326-27 (3rd Cir. 2011).  In particular, where, as here, a plan offers a diversified array of investment

18

1   options, the fact that some other funds might offer lower expense ratios is not relevant, as

2   ERISA does not require fiduciaries to "scour the market to find and offer the cheapest

3   possible funds (which might, of course, be plagued by other problems)." Hecker, 556

4   F.3d at 586, quoted in Loomis, 658 F.3d at 670; see also Tibble I, 729 F.3d at 1135.

5          Courts have dismissed claims that fiduciaries are required to offer institutional-

6   class over retail-class funds, and claims that fiduciaries were imprudent in failing to offer

7   cheaper funds.  For example, in Tibble I, the Ninth Circuit noted while it is true that retail-

8   class mutual funds generally have higher expense ratios than their institutional-class

9   counterparts, largely because the amount of assets invested in institutional-class funds is

10  far greater than that associated with the typical individual investor, that does not mean

11  that a fiduciary should offer only institutional-class funds.  "There are simply too many

12  relevant considerations for a fiduciary, for that type of bright-line approach to prudence to

13  be tenable." Id., 729 F.3d at 1135 (noting that a fiduciary might choose funds with higher

14  fees for a number of reasons, including potential for higher return, lower financial risk,

15  more services offered, or greater management flexibility).

16          In Hecker, the Seventh Circuit found "nothing in the statute that requires plan

17  fiduciaries to include any particular mix of investment vehicles in their plan," and rejected

18  the argument that a plan administrator is required to offer only institutional-class funds,

19  noting that retail-class funds, being open to the public, give participants the benefits of

20  competition. Id., 556 F.3d at 586.  In Loomis, the Seventh Circuit repeated this point,

21  explaining that because retail funds are offered to investors in the general public, their

22  expense ratios are necessarily set against the backdrop of market competition, which

23  benefits participants; in addition, they are highly liquid, unlike institutional vehicles. Id.,

24  658 F.3d at 670-72, cited in Tibble I, 729 F.3d at 1134.  The court added that "[a] pension

25  plan that directs participants into privately held trusts or commingled pools . . . lacks the

26  market-to-market benchmark provided by a retail mutual fund." Id., 658 F.3d at 670-72.

27  Thus, the retail-versus-institutional-share-class claim must be dismissed. See Iqbal, 556

28  U.S. at 678; see also Renfro, 671 F.3d at 326-28 (affirming dismissal of a claim "directed

United States District Court
Northern District of California

1    exclusively to the fee structure" of a Plan).

2         Plaintiffs' contention that the Plan fiduciaries should have offered cheaper share

3    classes of the funds actually included in the Plan's investment lineup is based on the

4    assumption that the mere inclusion of a fund with an expense ratio that is higher than that

5    of the lowest share class violates the duty of prudence.  This claim, standing alone, is

6    insufficient to state a claim that  fiduciaries imprudently failed to consider lower cost

7    options.  Moreover, the allegations in the complaint show that the Plan fiduciaries

8    changed the investment options from year to year.  See, e.g., Cplt ¶¶ 49-51, 64-66, 68-69

9    (identifying funds removed in 2012, 2014, and 2015).  This supports the inference that

10   the fiduciaries were monitoring the investment options.

11        Further, the facts as pled reflect that the Plan fiduciaries provided a diverse mix of

12   investment options and expense ratios for participants.  The breadth of investments and

13   range of fees the Plan offered participants fits well within the spectrum that other courts

14   have held to be reasonable as a matter of law.  For example, plaintiffs allege that the

15   Plan's investment options charged fees ranging from .05% to 1.24%.  See Cplt ¶¶ 47-55.

16   In Tibble I, 729 F.3d at 1135, the Ninth Circuit affirmed the reasonableness of fees that

17   "varied from .03[%] to 2%."  In Loomis, 658 F.3d at 669-72, the Seventh Circuit affirmed

18   dismissal of an excessive-fee claim where "expense ratios rang[ed] from 0.03% to

19   0.96%."  In Renfro, 671 F.3d at 319, 326-28, the Third Circuit affirmed dismissal of an

20   excessive fee claim where fees "ranged from 0.1% to 1.21%."  In Hecker, 556 F.3d at

21   586, the Seventh Circuit affirmed dismissal of an excessive-fee claim where "[a]t the low

22   end, the expense ratio was .07%; at the high end, it was just over 1%."

23        As for plaintiffs' citation of Tussey and Braden in support of their assertion that

24   dismissal would be inappropriate, and that they should be permitted to explore whether

25   there was some imprudence in how the fiduciaries selected share classes for the Plan,

26   the court finds that those cases are distinguishable.  In both Tussey and Braden – unlike

27   the situation here – the complaint alleged facts supporting the inference that the

28   fiduciaries' process for selecting the fund options was flawed.

United States District Court
Northern District of California

United States District Court
Northern District of California

For example, in <u>Tussey</u>, the court found "allegations of wrongdoing with respect to fees [sufficient to] state a claim for fiduciary breach" where an outside consulting firm advised the administrator it was overpaying for Plan recordkeeping services and cautioned that the revenue sharing the recordkeeper received under the Plan might have been subsidizing other corporate services the recordkeeper provided to the administrator. <u>Id.</u>, 746 F.3d at 331, 335-36.  In <u>Braden</u>, the court found that allegations that the mutual funds paid "kickbacks . . . [to the fund's trustee] in exchange for inclusion of their funds in the Plan," together with allegations that the fund offered only ten retail-class mutual funds despite its large size, were sufficient to state a claim of fiduciary breach.  <u>Id.</u>, 588 F.3d at 590, 594-95.

By contrast, the conclusory claim asserted by plaintiffs in the present case is more akin to the claims that failed in <u>Loomis</u>, <u>Renfro</u>, and <u>Hecker</u>.  Courts can and do consider the total menu of available investment options in assessing whether excessive-fee allegations are plausible.  In <u>St. Vincent</u>, the Second Circuit noted that "the prudence of each investment is not assessed in isolation, but, rather, as the investment relates to the portfolio as a whole."  <u>Id.</u>, 712 F.3d at 717.  Similarly, in <u>Renfro</u>, the court held that "the range of investment options and the characteristics of those included options – including the risk profiles, investment strategies, and associated fees – are highly relevant and readily ascertainable facts against which the plausibility of claims challenging the overall composition of a plan's mix and range of investment options should be measured."  <u>Id.</u>, 671 F.3d at 327); <u>see also</u> <u>Loomis</u>, 658 F.3d at 673-74 (same); <u>Hecker</u>, 556 F.3d at 586 (same).

In short, the complaint alleges no facts that are suggestive of imprudent action. While plaintiffs appear to be challenging the entire lineup of funds, the challenge is primarily based on speculation that the Plan fiduciaries "could have" provided lower-cost versions of the funds, or "could have" had the same advisors manage the same funds in a separate account, or "could have" structured the investments differently.  It is inappropriate to compare distinct investment vehicles solely by cost, since their essential

features differ so significantly.  In particular, mutual funds have unique regulatory and transparency features, which make any attempt to compare them to investment vehicles such as collective trusts and separate accounts an "apples-to-oranges comparison."  See Tibble I, 729 F.3d at 1134.

      c.  Claim alleging imprudent revenue-sharing arrangement with Vanguard

   In the third cause of action, plaintiffs allege that defendants imprudently caused the Plan to pay excessive administrative fees to Vanguard (the Plan's recordkeeper), and failed to put Plan administrative services out for competitive bidding on a regular basis. Cplt ¶¶ 121-124.  Plaintiffs assert that because the cost of recordkeeping services depends on the number of participants, not on the amount of assets in participants' accounts, prudent fiduciaries of defined contribution plans negotiate recordkeeping fees on the basis of a fixed dollar amount per plan participant, rather than as a percentage of plan assets.  Cplt ¶¶ 79-80.  Plaintiffs contend that a recordkeeper involved in an arrangement providing asset-based fees will thus receive unreasonable compensation, unless the recordkeeper rebates to the plan all revenue-sharing payments that exceed a reasonable per-participant fee.  Cplt ¶¶ 81-83.

   Plaintiffs also assert that defendants acted imprudently in "fail[ing] to monitor and control" the amount of the fees Vanguard received.  Cplt ¶¶ 85, 89.  They allege that from February 2010 through March 31, 2012, defendants caused the Plan to compensate Vanguard for recordkeeping services with asset-based revenue sharing of the annual expenses of the Plan's investment options, and that those fees increased through that period as the Plan assets grew from $13 billion to $16 billion (a 22% increase) even though the cost to Vanguard of recordkeeping services did not significantly change during that time.  Cplt ¶ 86.  They contend "upon information and belief" that defendants have not conducted a competitive bidding process for the Plan's recordkeeping services within the past six years, thereby imprudently causing the Plan to pay excessive recordkeeping fees, and causing Plan participants to lose "millions of dollars in their retirement savings."

United States District Court
Northern District of California

1  Cplt ¶¶ 88-90.

2         Defendants argue that the third cause of action should be dismissed because the

3  complaint does not plausibly allege that defendants breached the duty of prudence in

4  implementing the Plan's revenue-sharing arrangement with Vanguard.  In particular,

5  defendants contend that plaintiffs plead no facts showing the specific amount of fees the

6  Plan paid during this period, and offer no benchmark to establish an amount of fees that

7  would have been reasonable, and that plaintiffs plead no facts showing that defendants'

8  process was flawed.

9         Instead, defendants assert, plaintiff's claim depends on three primary allegations –

10  (1) that from February 2010 to March 31, 2012, the Investment Committee compensated

11  Vanguard for administrative services exclusively through a share of the asset-based

12  expenses charged for the Plan's investment options, rather than on a fixed per-participant

13  basis; (2) that the assets in the Plan increased by 22% during this two-year period,

14  leading to an "unreasonable" increase in Vanguard's recordkeeping compensation; and

15  (3) that the Plan fiduciaries failed to solicit bids from alternative service-providers.

16  Defendants argue that each of these theories fails as a matter of law, because ERISA

17  does not condemn a fiduciary's use of a revenue-sharing arrangement to cover

18  recordkeeping costs; because the increase in Plan assets over this two-year period does

19  not support the inference that Vanguard's revenue-sharing payments grew to

20  unreasonable levels; and because ERISA does not require plan fiduciaries to obtain

21  competitive bids from recordkeeping service providers.

22         In opposition, plaintiffs argue that the complaint pleads sufficient facts to state a

23  claim of breach of the duty of prudence with regard to the recordkeeping fees.  As for

24  defendants' suggestion that plaintiffs must specify the exact amount Vanguard received

25  as compensation for its recordkeeping services from all sources, plaintiffs contend that

26  defendants themselves do not state how much Vanguard received in total compensation,

27  or explain how that compensation was reasonable, and that they also fail to explain how

28  any participant could determine the amount of compensation that was paid, in view of the

United States District Court
Northern District of California

1   fact that defendants do not disclose the amount Vanguard receives in revenues sharing

2   from Plan investments.  They assert that defendants are seeking the kind "heightened

3   fact pleading of specifics" that is not required even under Twombly.

4       As for defendants' argument that the revenue-sharing arrangement existed for

5   only the first two years of the proposed class period, plaintiffs concede that the complaint

6   and judicially-noticeable documents show that defendants in fact did switch to lower-cost

7   share classes and did end revenue sharing by April 2012.  Nevertheless, they question

8   why defendants fail to explain why they did not end the arrangement earlier, when

9   (according to plaintiffs) the facts alleged in the complaint suggest that they should have

10  done so.  Plaintiffs assert that "these facts plausibly suggest" that defendants simply did

11  not get around to fixing the Plan in this respect until April 2012, which plaintiffs claim is

12  not the conduct of a prudent fiduciary.

13      Plaintiffs argue that the facts alleged in the complaint plausibly show that

14  defendants allowed Vanguard to take fees it collected from the Plan's investment options

15  and did not monitor that total compensation, much less negotiate a fee based on a fixed,

16  per participant rate, to ensure Vanguard's compensation was and remained reasonable

17  from year to year.  Plaintiffs assert that a prudent fiduciary would have put the Plan's

18  recordkeeping services out for competitive bidding on a regular basis and, in doing so,

19  would have significantly lowered Plan expenses and increased participant retirement

20  account balances.

21      Plaintiffs also argue that defendants' contention that nothing in ERISA requires

22  fiduciaries to solicit bids is "erroneous[ ]."  They cite the Seventh Circuit's decision in

23  George in support of the proposition that "prudent fiduciaries engage in a competitive

24  bidding process on a regular basis" to ensure that a plan's recordkeeping expenses are

25  reasonable.  While they concede that George does not hold that ERISA compels

26  competitive bidding on a regular basis, they argue that George does "recognize" that

27  prudent fiduciaries ordinarily solicit bids for the management of large plans such as this

28  one.  Plaintiffs assert further that under Tussey, a failure to monitor plan recordkeeping

United States District Court
Northern District of California

1    expenses paid through revenue sharing is a "recognized breach of fiduciary duty."  At a

2    minimum, they contend, the third cause of action raises disputed factual issues which

3    cannot be resolved on a Rule 12(b)(6) motion.

4         The court finds that the complaint does not plead facts sufficient to state a

5    plausible claim of breach of the duty of prudence in connection with the recordkeeping

6    fees charged by Vanguard.  Essentially, plaintiffs allege that for two years at the

7    beginning of the six-plus-year proposed class period, defendants paid recordkeeping fees

8    using an asset-based revenue-sharing arrangement, and that those fees necessarily

9    exceeded a prudent amount purely because they were asset-based and not based on the

10   number of participants, and because plaintiffs believe that the fiduciaries did not seek

11   competitive bids for the recordkeeping services.  See Cplt ¶¶ 79-82, 85-87.

12        It is plaintiffs' obligation to plead facts that create more than a "sheer possibility

13   that [the Plan fiduciaries] ha[ve] acted unlawfully" to make a plausible claim for relief and

14   to survive a motion to dismiss.  See Iqbal, 556 U.S. at 678.  While the question whether it

15   was imprudent to pay a particular amount of recordkeeping fees does involve questions

16   of fact that cannot be resolved on a Rule 12(b)(6) motion, plaintiffs have not alleged facts

17   from which the court can "infer more than the mere possibility of misconduct," and thus

18   have alleged – but have not shown – that they are entitled to relief.  See id. at 679.

19        In the absence of any such facts, all that remains is plaintiffs' conclusory assertion

20   that fees under a revenue-sharing arrangement are necessarily excessive and

21   unreasonable.  Such a per-se rule is without support.  Revenue sharing is a "common"

22   and "acceptable" investment industry practice that "frequently inure[s] to the benefit of

23   ERISA plans."  See Tussey, 746 F.3d at 336; see also Hecker, 556 F.3d at 585 (an

24   arrangement whereby 401(k) plan trustee and recordkeeper "recovered its

25   [administrative] costs from the [plan] participants" by "assess[ing] asset-based fees

26   against the various mutual funds," and transferring to itself some of the money collected,

27   "violate[d] no statute or regulation").

28        Further, the allegation that the Plan's assets grew over the two-year period in

1   which the Plan's administrative services costs were defrayed out of asset-based fees

2   does not, without more, show that this arrangement resulted in unreasonable fees.  To

3   the contrary, the fact that the Plan fiduciaries renegotiated the arrangement to specify a

4   per-participant fee after just two years of receiving asset-based revenue-sharing

5   payments for its services, and the fact that during those two years, defendants switched

6   to cheaper share classes for at least four funds, see Cplt ¶ 86; Vergara Decl., Ex. F

7   (2011 IRS Form 5500) at 34; Vergara Decl. Exh. G (2012 Form 5500) at 31, plausibly

8   suggest that defendants were monitoring recordkeeping fees to ensure that they did not

9   become unreasonable.

10         Finally, the allegation that the Plan fiduciaries were required to solicit competitive

11   bids on a regular basis has no legal foundation.  Indeed, plaintiffs admit that nothing in

12   ERISA compels periodic competitive bidding.  As for plaintiffs' contention that the George

13   decision supports such a requirement, the court in George held that the failure to solicit

14   competitive bids might be imprudent where (1) plaintiffs presented concrete evidence

15   about the objective level of fees and why they were unreasonable; and (2) the plan

16   fiduciaries had not renegotiated their recordkeeping arrangement for more than fifteen

17   years.  See George, 641 F.3d at 798-99 (based on evidence adduced in the case, a

18   triable issue of fact existed regarding the prudence of the plan fiduciaries' decision not to

19   solicit competitive bids).

20         George's analysis has no application here, where plaintiffs do not even allege that

21   a competitive bid would have benefitted the Plan or the Plan participants, because they

22   do not allege any facts from which one could infer that the same services were available

23   for less on the market.  See, e.g., Young v. GM Inv. Mgmt. Corp., 325 F. App'x 31, 33

24   (2nd Cir. 2009) (plaintiffs did not plausibly allege that the fiduciaries agreed to pay

25   excessive fees where they "fail[ed] to allege that the fees were excessive relative to the

26   services rendered").

27         In Tussey, which was an appeal following a bench trial in which the district court

28   entered judgment in the plaintiffs' favor, the plaintiffs faulted the plan's fiduciaries for

United States District Court
Northern District of California

26

allegedly failing to "adequately leverage the Plan's size to reduce fees" or to assess whether its recordkeeper's "pricing was competitive."  The Eighth Circuit affirmed the district court on the recordkeeping claim, finding that the case involved "serious allegations of wrongdoing" – i.e., that the outsized recordkeeping fees were subsidizing costs that would otherwise have been the sponsor's own responsibility – which stated a claim of breach of the duty of loyalty.  Id., 746 F.3d at 336.

Here, however, these indicia of imprudence are not present.  Plaintiffs have alleged no facts suggesting that the Plan fiduciaries could have obtained less-expensive recordkeeping services.  Moreover, in contrast to the facts at issue in George, the Plan fiduciaries did renegotiate their recordkeeping arrangement with Vanguard to limit compensation to annual, per-participant fees.  In addition, plaintiffs do not allege any facts showing that those renegotiated fees were unreasonable.

Tussey is even less relevant, because in that case, the evidence presented at trial revealed significant wrongdoing, including that the defendant used revenue sharing to benefit itself and Fidelity (the recordkeeper) at the plan's expense.  Id., 746 F.3d at 335-36.  Here, there are no allegations of wrongdoing or engaging in prohibited transactions.

While plaintiffs allege that the recordkeeping fees paid during the period February 2010 to March 31, 2012, were excessive, there are no facts alleged showing what recordkeeping fees Vanguard charged (so it is not clear on what basis plaintiffs are asserting that the fees were excessive).  Plaintiffs do not claim that the Plan fiduciaries were required to disclose the amount of the recordkeeping fees but failed to do so.  More importantly, there are no facts alleged showing that the Plan fiduciaries failed to consider putting the fee structure out for competitive bidding, or failed to negotiate a reasonable fee structure with Vanguard.

d.      Claim alleging failure to timely remove low-performing ARTVX Fund

In the fourth cause of action, plaintiffs allege that defendants acted imprudently and violated the IPS by failing to remove the ARTVX Fund as a Plan investment option earlier than they did.  Cplt ¶¶ 125-129.  Defendants contend that the fourth cause of

1   action should be dismissed because plaintiffs have not pled facts sufficient to state a

2   claim of breach of the duty of prudence in connection with the timing of the removal of the

3   ARTVX Fund.

4          The ARTVX Fund was provided as a Plan investment option, from February 2010

5   to April 1, 2014.  Cplt ¶ 91.  Plaintiffs allege that in addition to imposing an excessive fee

6   structure, the ARTVX Fund significantly underperformed its benchmark and alternatives

7   available to the Plan, such that a prudent fiduciary would have removed it well before

8   defendants did.  Cplt ¶¶ 91-99.  They assert that ERISA's prudent fiduciary standards

9   require regular monitoring of the performance of plan investment options, and removal of

10  any fund that persistently underperforms, and that defendants violated those standards.

11  Cplt ¶¶ 92, 98.

12         Plaintiffs also assert that defendants violated the fund monitoring requirements of

13  the IPS.  Cplt ¶ 92.  The IPS identifies a number of qualitative and quantitative factors

14  that the Investment Committee considers when selecting and monitoring any investment

15  option.  The qualitative factors include "fundamental changes in a fund manager's

16  investment philosophy, organizational structure (e.g., manager tenure), and financial

17  condition (including any significant changes in total assets under management)."  The

18  quantitative factors include "adherence to fund objectives, performance, and expenses."

19  See Exh. J to Vergara Decl., at 7

20         Plaintiffs allege that the ARTVX Fund persistently lagged its benchmark, and

21  ranked in the bottom 2-6%, in four of the previous five years, performing poorly in the

22  Morningstar category rankings in three of the previous four years.  See Cplt ¶¶ 93-94.

23  They assert that notwithstanding that underperformance, and the fund's failure to meet

24  the Plan's investment strategy objectives, defendants failed to remove the fund until

25  March 31, 2014, causing the Plan to suffer over $70 million in losses relative to more

26  prudent alternatives defendants could have provided.  Cplt ¶¶ 92, 94, 97-98.  Plaintiff's

27  theory is that the ARTVX Fund could and should have been removed prior to April 2014,

28  and that defendants acted imprudently in failing to do so.  See Cplt ¶¶ 98-99.

United States District Court
Northern District of California

1          Defendants argue that this cause of action is nothing more than an attempt to

2    second-guess the Plan fiduciaries' balancing of competing interests under conditions of

3    uncertainty, and argue that the mere fact that an investment has performed poorly is

4    insufficient to support a plausible inference that the fiduciaries failed to monitor the

5    investment.  They also contend that the complaint pleads no facts directly addressing

6    faults in the Plan fiduciaries' process, and that to state a claim plaintiffs must allege facts

7    sufficient to permit the court to reasonably infer that there was a breach, which requires

8    more than the mere "possibility" of misconduct.  They argue that plaintiffs cannot meet

9    that standard by relying on allegations concerning the magnitude of a decrease in the

10   investment's price or by alleging – in hindsight – that better opportunities were available.

11         Defendants note that plaintiffs do not allege that the fiduciaries ignored a fund

12   manager change, or a change in investment philosophy, or some other signal of a

13   problem requiring closer attention, and that they have not referenced any specific

14   monitoring steps that were not followed by the Committee.  Instead, defendants assert,

15   plaintiffs' challenge is directed solely at the ARTVX Fund's performance leading up to its

16   eventual removal from the Plan lineup.

17         Defendants argue, however, that such allegations do not show a process failure –

18   and indeed, the fact that the Plan fiduciaries did ultimately remove the ARTVX Fund

19   supports the opposite inference that they were monitoring the Fund and removed it when

20   they determined it was not, at that time, a suitable option for the Plan.  Defendants claim

21   that it is "pure speculation" to say that a meeting or other review by the Investment

22   Committee would or should have resulted in a particular change of course or would

23   otherwise have prevented the consequences of failure to remove the Fund from the Plan

24   lineup.

25         As for the allegation that Plan participants would have done better in alternative

26   investments offered by Vanguard that outperformed the ARTVX Fund during the relevant

27   period, see Cplt ¶¶ 94-95, defendants reiterate that ERISA judges fiduciary decision-

28   making as of the time the decisions were made.  They argue that plaintiffs have not

1  alleged any facts sufficient to suggest that the Plan fiduciaries could predict that the

2  ARTVX Fund would underperform plaintiffs' preferred alternatives during the period from

3  February 2010 until April 1, 2014, when the fund was removed from the lineup.

4       Finally, defendants contend that the allegations regarding the ARTVX Fund's

5  performance before 2014, in comparison to the fund's alleged benchmark in one-, three-,

6  and five-year periods leading up to September 30, 2014, see Cplt ¶ 97, say nothing about

7  the information the Plan fiduciaries had at hand when deciding whether to remove the

8  fund in the period before April 1, 2014, when it was dropped from the lineup.  They also

9  argue that judicially noticeable performance data shows that the ARTVX Fund did not

10  consistently underperform its benchmark before it was removed, but rather outperformed

11  it on a long-term trailing basis (citing Vergara Decl., Ex. S (Fund Morningstar

12  Performance Charts)).  Accordingly, defendants contend, the fiduciaries' choice not to

13  remove the fund based on short-term underperformance was consistent with a focus on

14  long-term performance, which defendants contend was a rational philosophy for

15  retirement plans, with their "longer investment horizons."

16       In opposition, plaintiffs contend that the complaint pleads sufficient facts to state a

17  viable claim of breach of the duty of prudence with regard to the timing of the removal of

18  the ARTVX Fund.  They assert that an examination of the "terrible performance" of the

19  ARTVX Fund would have led a prudent fiduciary to remove it earlier than defendants did.

20  Plaintiffs argue that defendants have identified no facts that justify their waiting until April

21  2014 to remove the ARTVX Fund from the Plan options, despite its drastically poor

22  performance in 4 of the 5 preceding years.

23       Plaintiffs also criticize defendants for citing in their moving papers only to the

24  "qualitative factors" listed in the IPS, asserting that the IPS also lists "quantitative

25  factors," including the 1-, 3-, and 5-year performance relative to benchmark, which the

26  fiduciaries were also required to consider, but which (according to plaintiffs) "[d]efendants

27  evidently did not do here."  And, plaintiffs argue, even if defendants had identified any

28  "facts" justifying the delay in removing the Fund, that would only raise a factual issue

30

1   which cannot be decided in a Rule 12(b)(6) motion.

2          Plaintiffs contend that they are not asserting that the ARTVX Fund was an

3   imprudent choice merely because it lost value, but rather, that it should have been

4   removed well before 2014, based on consistent underperformance.  They argue that

5   defendants have provided no explanation for taking 2 years to decide to remove the

6   ARTVX Fund, or even describe when they noticed the fund's underperformance or what

7   actions they took in light of that underperformance.  Plaintiffs assert that all defendants

8   have done is to show the possibility that they engaged in some process at some time that

9   ultimately led to the removal of this fund in April 2014.  They claim that such a showing

10  does not establish the propriety of their inaction before that time.  At best, they assert, it

11  raises only a factual dispute.

12         The court finds that complaint does not plead facts sufficient to state a claim with

13  regard to the timing of the removal of the ARTVX Fund.  Rather, the allegations create a

14  plausible inference that the Plan fiduciaries were attentively monitoring the fund, as they

15  removed the fund in April 2014, and did so while it was still outperforming its benchmark

16  on a long-term trailing basis.  Further, plaintiffs' characterization of the fund's

17  performance includes a substantial period after defendants had removed the fund, and

18  plaintiffs themselves now appear to recognize that the period of "consistent"

19  underperformance did not begin until "around 2012."

20         Poor performance, standing alone, is not sufficient to create a reasonable

21  inference that plan administrators failed to conduct an adequate investigation – either

22  when the investment was selected or as its underperformance emerged – as ERISA

23  requires a plaintiff to plead some other objective indicia of imprudence.  See St. Vincent,

24  712 F.3d at 718-19; DeBruyne, 920 F.2d at 465.  Indeed, a fiduciary may – and often

25  does – retain investments through a period of underperformance as part of a long-range

26  investment strategy.  See Jenkins v. Yager, 444 F.3d 916, 926 (7th Cir. 2006) (defendant

27  did not breach fiduciary duties by retaining the same mutual funds in 401(k) plan lineup

28  even though those funds lost money over a three-year period, as it can be reasonable "to

United States District Court
Northern District of California

United States District Court
Northern District of California

1  stay with . . . mutual funds even during years of lower performance").  The Plan

2  fiduciaries plainly engaged in a process for removal of the ARTVX Fund.  It is not part of

3  defendants' burden to confirm what the process involved.  The mere fact that the fund's

4  price dropped is not sufficient to state a claim for breach of fiduciary duty.

5  As for plaintiffs' assertion that Plan participants would have done better in

6  alternative investments offered by Vanguard that outperformed the ARTVX Fund during

7  the relevant period, ERISA judges fiduciary decision-making as of the time the decisions

8  were made.  See 29 U.S.C. § 1104(a)(1)(B) (fiduciary must act "with the care, skill,

9  prudence, and diligence under the circumstances then prevailing"); St. Vincent, 712 F.3d

10  at 716 ("we judge a fiduciary's actions based upon information available to the fiduciary at

11  the time of each investment decision and not from the vantage point of hindsight");

12  DeBruyne, 920 F.2d at 465 (allegation that a fund lost money when it did not "follow[] the

13  crowd" does not show a breach of the duty, which requires only "prudence, not

14  prescience").  Plaintiffs have not alleged any facts sufficient to suggest that the Plan

15  fiduciaries could predict that the ARTVX Fund would underperform plaintiffs' preferred

16  alternatives during the period from February 2010 until April 1, 2014, when the Fund was

17  removed from the lineup.

18  3.  Claim alleging breach of the duty to monitor

19  In the fifth cause of action, plaintiffs allege that Chevron Corporation breached its

20  fiduciary duty to monitor appointees to whom it delegated fiduciary responsibility – "to the

21  extent that any of Chevron Corporation's fiduciary responsibilities were delegated to

22  another fiduciary."  See Cplt ¶¶ 130-135.  Defendants contend that the fifth cause of

23  action fails because it is derivative of the first through fourth causes of action, none of

24  which pleads facts sufficient to state a plausible claim.

25  Defendants also argue that the fifth cause of action would fail even if any of the

26  other claims survived, because a monitoring claim requires a threshold showing that the

27  monitoring fiduciary failed to "review the performance of its appointees at reasonable

28  intervals in such a manner as may be reasonably expected to ensure compliance with the

terms of the plan and statutory standards." See In re Calpine Corp., 2005 WL 1431506 at *6 (N.D. Cal. Mar. 31, 2005).  Defendants assert that there are no such allegations here, and that plaintiffs have indeed pled no facts at all about the monitoring process, or how it was supposedly deficient.

In opposition, plaintiffs argue that because the claims under the first through fourth causes of action are sufficient to state a claim, the claim of failure to properly monitor the fiduciaries alleged to have committed those breaches also survives dismissal.  Plaintiffs add that as with their other claims, they "lack the inside information necessary for them to plead specifically how [d]efendants monitored fiduciaries they appointed or were responsible for," and thus, plaintiffs argue, they "cannot be expected to plead those facts as a condition to surviving dismissal."

The court finds that plaintiffs have not alleged facts sufficient to state a claim of "failure to monitor."  A fiduciary "has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments at the outset." Tibble II, 135 S.Ct. at 1828; see also Rest. (Third) of Trusts § 90, Comment b, p. 295 (2007).  "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." Tibble II, 135 S.Ct. at 1828-29.

The allegation that Chevron Corporation had a duty to monitor its appointees "[t]o the extent that any of [Chevron's] fiduciary responsibilities were delegated to another fiduciary," suggests that plaintiffs do not know whether Chevron Corporation in fact delegated its fiduciary duties or to whom.  Moreover, the fifth cause of action does not specify which "appointees" or "other fiduciaries" Chevron Corporation failed to monitor.

The complaint asserts that Chevron Corporation is the sole named fiduciary of the Plan, and also alleges that under § 14.5 of the Plan, Chevron Corporation "may designate one or more actuaries, accountants, or consultants as fiduciaries to carry out its responsibilities under the Plan."  Cplt ¶¶ 18, 19.  However, the complaint also alleges that "[t]he duties and responsibilities of Chevron Corporation under the Plan that have not

33

been delegated are carried out by its directors, officers and employees, including the Chevron Investment Committee, acting on behalf of and in the name of Chevron Corporation and not as individual fiduciaries." Cplt ¶ 19. In view of this lack of clarity, the court finds that the fifth cause of action (and related factual allegations) does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a).

In addition, plaintiffs allege no facts showing how the monitoring process was deficient. They assert that Chevron Corporation breached its duty to monitor (a) by "failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so," and by "standing idly by as the Plan suffered enormous losses" as a result of the imprudent actions and omissions of the appointees; (b) by "failing to monitor its appointees' fiduciary process[;]" (c) by failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating the Plan's administrative fees and ensuring that the fees were competitive[;]" (d) by "failing to ensure that the monitored fiduciaries considered the ready availability of comparable investment options to such a jumbo plan," including lower-cost options; and (e) by "failing to remove appointees whose performance was inadequate in that they continued to maintain imprudent, excessive-cost investments, and an option that did not even keep up with inflation[.]" See Cplt ¶ 133.

Defendants are correct in referring to this claim as "derivative," as the claim as pled is wholly dependent on the breaches of duty alleged in the first through fourth causes of action. Thus, if plaintiffs cannot state a claim as to the first through fourth causes of action, they cannot maintain a claim that Chevron Corporation failed to monitor the fiduciaries.

Plaintiffs concede that they have alleged insufficient facts, but argue that they should be permitted to conduct discovery in order to acquire such facts. This is insufficient to state a plausible claim. While an ERISA plaintiff may lack direct evidence of the fiduciaries' process, the plaintiff must at a minimum plead facts that give rise to a "reasonable inference" that the defendant committed the alleged violation. See St.

1   <u>Vincent</u>, 712 F.3d at 718.  Plaintiffs have failed to do so.

2                                          **CONCLUSION**

3          In accordance with the foregoing, the motion is GRANTED.  The facts as pled do

4   not raise a plausible inference that defendants breached their fiduciary duties and/or

5   duties of loyalty and prudence.  The dismissal is WITH LEAVE TO AMEND.  Any

6   amended complaint is due no later than September 30, 2016.

7

8   **IT IS SO ORDERED.**

9   Dated:  August 29, 2016

10                                                     _____

11                                                     PHYLLIS J. HAMILTON
                                                        United States District Judge