M. RANDALL OPPENHEIMER (S.B. #77649)
roppenheimer@omm.com
CATALINA J. VERGARA (S.B. #223775)
cvergara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

BRIAN D. BOYLE (S.B. #126576)
bboyle@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Attorneys for Defendants
CHEVRON CORPORATION and
ESIP INVESTMENT COMMITTEE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| CHARLES E. WHITE, JR., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CHEVRON CORPORATION, *et al.*,<br><br>Defendants. | Case No. 4:16-cv-00793-PJH<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date: January 18, 2017<br>Time: 9:00 a.m.<br>Judge: Hon. Phyllis J. Hamilton<br>Courtroom: 3, Third Floor<br><br>Compl. Filed: February 17, 2016<br>Am. Compl. Filed: September 30, 2016<br><br>Trial Date: None set |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................................. 1

II.  LEGAL STANDARD ..................................................................................................... 2

III. ARGUMENT ................................................................................................................... 3

    A.   As This Court Has Already Held, Offering Plan Participants A Money Market Fund Over A Stable Value Fund Is Not A Fiduciary Breach. .................... 3

    B.   This Court Followed Ample Authority In Holding That Offering Retail Share Classes Is Not Imprudent. ........................................................................... 5

    C.   Plaintiffs Still Fail to State Any Claim Of Fiduciary Breach For Excessive Recordkeeping Fees. ............................................................................................. 7

        1.   Plaintiffs Failed to Allege Facts to Plausibly Suggest The Recordkeeping Fees Paid to Vanguard Prior to March 2012 Were Excessive. ................................................................................................. 8

        2.   Plaintiffs' Allegations That Chevron Had Illicit Motives to Drive Higher Recordkeeping Fees to Vanguard Are Also Barren. ...................... 9

        3.   Plaintiffs' Recordkeeping Fee Claim Relies on Hindsight to Assert that the Fiduciaries Should Have Transitioned Away from Asset-Based Fees Sooner. ......................................................................... 10

        4.   Plaintiffs' Claim Is Additionally Barred By The Three-Year Statute Of Limitations in ERISA § 413. ................................................................ 11

    D.   Plaintiffs Still Fail To State Any Claim That The Plan Fiduciaries Should Have Removed The Artisan Small Cap Value Fund Sooner Than They Did. ....... 12

    E.   Plaintiffs' New Prohibited Transactions Claim Is Barred By The Statute Of Limitations. .......................................................................................................... 13

    F.   Plaintiffs Concede That Their Duty To Monitor Claim Is Derivative. ................ 14

    G.   Dismissal Should Be With Prejudice. ................................................................. 15

IV.  CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. City of Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990)..................................................................................................15

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
   446 F.3d 728 (7th Cir. 2006)....................................................................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................2, 5

*Bell Atantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................2

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009)................................................................................................2, 6

*Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco*,
   792 F.2d 1432 (9th Cir. 1986)................................................................................................15

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014) .............................................................................................................2

*Fish v. Greatbanc Trust Co.*,
   749 F.3d 671 (7th Cir. 2014)..................................................................................................12

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)................................................................................................................10

*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980)..................................................................................................14

*Kay v. Likins*,
   160 F. App'x. 605 (9th Cir. 2005) .........................................................................................15

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011)....................................................................................................7

*Morse v. Stanley*,
   732 F.2d 1139 (2d Cir. 1984)..................................................................................................10

*Mullis v. United States Bankr. Ct.*,
   828 F.2d 1385 (9th Cir. 1987)..................................................................................................8

*In re Northrop Grumman Corp. ERISA Litig.*,
   No. CV 06-6213, 2015 WL 10433713 (C.D. Cal. Nov. 24, 2015) .........................................14

*Ortiz v. American Airlines, Inc.*,
   No. 4:16-cv-151-A, 2016 U.S. Dist. LEXIS 160588 (N.D. Tex. Nov. 18, 2016) .....................4

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*PBGC v. Morgan Stanley Inv. Mgmt., Inc.*,
    712 F.3d 705 (2d Cir. 2013) ......................................................................................................2

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ......................................................................................................3

*Song Fi, Inc. v. Google, Inc.*,
    No. C 14-5080 CW, 2016 U.S. Dist. LEXIS 83301 (N.D. Cal. June 27, 2016) .....................15

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .....................................................................................................8

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823
    (2015) ........................................................................................................................3, 6, 11, 14

*Wright v. Oregon Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) .................................................................................................14

**Statutes**

29 U.S.C. § 1104(a)(1)(A) ................................................................................................................3

29 U.S.C. § 1106(a) .......................................................................................................................13

29 U.S.C. § 1113(1) ..................................................................................................................4, 13

29 U.S.C. § 1113(2) .......................................................................................................................12

ERISA § 404(a)(1)(B) ....................................................................................................................14

ERISA § 406 ..................................................................................................................................14

**Rules**

Fed. R. Civ. P. 8 ..............................................................................................................................2

Fed. R. Civ. P. 12(b)(6) .................................................................................................................14

**Other Authorities**

U.S. Dept. of Labor, *A Look at 401(k) Plan Fees* (Aug. 2013) *available at*:
    https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-
    center/publications/401kFeesEmployee.pdf ...........................................................................10

U.S. Gov't Accountability Office, *GAO-11-291, 401(K) Plans: Certain Investment
    Options and Practices That May Restrict Withdrawals Not Widely Understood*
    (Mar. 3, 2011) *available at* http://www.gao.gov/new.items/d11291.pdf .................................4

The Vanguard Group, Inc., *Why Ownership Matters* (2014) *available at*
    https://about.vanguard.com/what-sets-vanguard-apart/why-ownership-matters/ .....................9

## I. INTRODUCTION

Plaintiffs' opposition confirms that their claims should be dismissed with prejudice. Rather than address the defects identified by the Court in its August 29, 2016 Order dismissing the original Complaint (Dkt. 40, the "Order"), plaintiffs' opposition brief reads more like a motion for reconsideration, as they argue that the recycled theories in the Amended Complaint— theories this Court already rejected—should nonetheless survive because the Court simply got it wrong the first time. (*See* Dkt. 47 at 1:3–2:2.) For example, they claim the Court "erroneously required Plaintiffs to plead highly detailed factual allegations of the deficiencies in the process by which Defendants failed to discharge their fiduciary duties in order to state their claims." (*Id.* at 1:3–5.) But the Court committed no error. Rather, guided by controlling pleading standards, the Court found that plaintiffs failed to allege any facts to support their breach of loyalty claims and failed to allege facts sufficient to state plausible claims of imprudence. Indeed, the Court recognized that plaintiffs alleged facts showing that the Chevron Corporation Employee Savings Investment Plan (the "Chevron Plan" or "Plan") fiduciaries repeatedly reduced Plan fees and adjusted Plan options over time, evidencing a robust fiduciary process, not the absence of one. (Order at 15:25–16:4.)

Plaintiffs have added nothing of substance in their Amended Complaint to allow this case to proceed. Rather, plaintiffs have opted to stand on the allegations of certain claims in the original Complaint and, for other claims, to offer only more of the same type of allegations this Court has found to be insufficient to support a claim. The only new twist in the Amended Complaint is an alleged conflict of interest—nowhere mentioned in their original Complaint but apparently based on information long known to plaintiffs. The theory is so farfetched that plaintiffs cannot even spell out any *quid pro quo* in the Amended Complaint. And in their brief, plaintiffs only go so far as to characterize their theory as a "plausible explanation or motive for why Defendants may have wanted to benefit Vanguard." (Dkt. at 5:3–6.) But to state a claim, plaintiffs must do more than throw weak hypotheticals against the wall to see what sticks. Settled case law requires them to allege actual facts to support their claims. They have again failed to do so here. Their claims should be dismissed in their entirety and with prejudice.

## II.   LEGAL STANDARD

Plaintiffs misstate the applicable legal standards in several significant respects.

First, plaintiffs repeatedly attempt to shift their pleading burden onto defendants, arguing that defendants' motion to dismiss offers explanations that are "merely consistent with lawful conduct," which, plaintiffs assert, is insufficient to warrant dismissal of plaintiffs' claims. (Dkt. 47 at 3:10–12 (emphasis deleted) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009)); *see also* Dkt. 47 at 2:1–2; 11:17–19 and 20:20–22 (arguing the same).) Plaintiffs, however, are missing a step: Defendants have no duty to establish the legality of their conduct; rather plaintiffs must first plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And where, as here, defendants have proffered likely alternative explanations of the facts alleged, plaintiffs cannot stand on their allegations but must rule out those alternatives. *See Braden*, 588 F.3d at 596.

Second, plaintiffs suggest that they should be held to a lower pleading standard because they lack access to "inside information" and cannot offer "detailed facts." (Dkt. 47 at 1:11–15.) But it is no excuse that plaintiffs lack access to the minutia of defendants' fiduciary process at the pleading stage. *Twombly* was itself an antitrust conspiracy case, where plaintiffs did not have a direct line of sight into the defendants' conduct. *See Bell Atantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Nonetheless, the Supreme Court held that, to satisfy Rule 8 of the Federal Rules of Civil Procedure, a complaint "requires more than labels and conclusions," *id*. at 555; it requires allegations "plausibly suggesting (not merely consistent with)" a violation, *id*. at 557.[1] Further, as defendants have previously explained, fiduciary discretion in ERISA actions is reviewed "deferentially" for an "abuse of discretion," *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006), in light of "the circumstances . . . prevailing at the time the fiduciary act[ed]," *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014) (citation and

---

[1] Plaintiffs argue that the Court improperly relied on *PBGC v. Morgan Stanley Inv. Mgmt., Inc.* ("*St. Vincent*"), 712 F.3d 705 (2d Cir. 2013), but *St. Vincent* applied the *Twombly/Iqbal* standard. *See St. Vincent*, 712 F.3d at 717 ("[T]his case requires us to apply the pleading standards articulated in [*Twombly* and *Iqbal*] to the claim of a breach of fiduciary duties under ERISA.").

1   quotations omitted).  In other words, plaintiffs must allege facts plausibly suggesting that the
2   Chevron Plan fiduciaries' actions were an abuse of discretion at the time those challenged
3   decisions were made.

4   Finally, plaintiffs again argue, as they did in the prior round of briefing, that "[p]roviding
5   imprudent investment options . . . is [a] breach of the duty of loyalty expressed in [29 U.S.C.]
6   § 1104(a)(1)(A)."  (Dkt. 47 at 8:9–11 (citation omitted).)  They even go so far as to argue that the
7   Court erred in finding that the duties of loyalty and prudence are distinct.  (*Id.* at 7:27–28.)
8   Plaintiffs are again mistaken.  This Court addressed plaintiffs' argument, at length, in its dismissal
9   Order.  (*See* Order at 7:21–8:26 (stating, inter alia, that "Plaintiffs cite no authority in support of
10  the proposition that causing an ERISA Plan to incur unreasonable expenses is a breach of the duty
11  of loyalty," and referencing the definition of the duty of loyalty in the Third Restatement of
12  Trusts).)  The Court's Order is supported by the case law, which holds that excessive fee
13  allegations relate to a disloyalty claim only where the alleged facts support the inference that the
14  fees were being paid to the plan's fiduciaries, or were otherwise incurred as a result of a
15  fiduciary's divided loyalties.  *See*, *e.g.*, *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011).

16  **III.    ARGUMENT**

17  **A.    As This Court Has Already Held, Offering Plan Participants A Money Market Fund Over A Stable Value Fund Is Not A Fiduciary Breach.**
18

19  In dismissing the original Complaint, the Court held that plaintiffs' challenge to
20  defendants' selection of a money market fund as the Plan's capital preservation option was
21  insufficient to state a claim, finding that "[o]ffering a money market fund as one of an array of
22  mainstream investment options along the risk/reward spectrum more than satisfied the Plan
23  fiduciaries' duty of prudence."  (Order at 13:20–22.)  This holding is consistent with the Ninth
24  Circuit's rejection of an imprudence claim predicated on a plan fiduciary offering "a short-term
25  investment fund . . . rather than a stable value fund."  *Tibble v. Edison Int'l* ("*Tibble I*"), 729 F.3d
26
27
28

1110, 1136 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015).[2]  Nonetheless, plaintiffs continue to argue that stable value offered the only prudent option available to the Plan fiduciaries "for the period since 2008."[3]  (Dkt. 47 at 12:4–7.)  Even the selectively-excerpted stable value marketing materials plaintiffs offer in the Amended Complaint undermine that claim.

      Defendants' motion detailed the many downsides to stable value, and plaintiffs' opposition ignores these shortcomings.  In particular, stable value's performance during the alleged class period depended on historically low interest rates that no prudent fiduciary could have known would persist.  (*See* Dkt. 44 at 7.)  Plaintiffs also ignore the liquidity restrictions that stable value products impose (including restrictions on participants' freedom in allocating their accounts).  Plaintiffs breeze past the many failures of stable value funds during the financial crisis, which were detailed not only in defendants' motion, but in the Government Accountability Office ("GAO") Report plaintiffs cited in the Amended Complaint.  (*See* Dkt. 44 at 6–7 & n.3 (citing GAO Report, *available at* http://www.gao.gov/new.items/d11291.pdf).)  And when defendants pointed out that the articles on which plaintiffs rely predicted that stable value may not continue to outpace the returns of money market funds (*See* Dkt. 44 at 7:7–17), plaintiffs discount those predictions as mere "speculation" (*See* Dkt. 47 at 10 n. 1).  But that is the point.  Plaintiffs' claim requires the Plan fiduciaries to have accurately predicted the future performance of stable value and money market funds.  Of course, they could not, and only with the benefit of hindsight do plaintiffs contend stable value outperformed the money market option.

      Plaintiffs suggest again, in their opposition, that defendants have not proffered facts to justify the Plan fiduciaries' selection of the money market fund—but the burden is on ***plaintiffs*** to

---

[2] Plaintiffs do not address this holding in *Tibble I*, but direct the Court instead to an unpublished order from the Northern District of Texas to argue that their allegations with respect to the stable value fund claim are adequate.  (*See* Dkt. 47 at 3:13–16) (citing *Ortiz v. American Airlines, Inc.*, No. 4:16-cv-151-A, 2016 U.S. Dist. LEXIS 160588 at *24, 28, 30–34 (N.D. Tex. Nov. 18, 2016).  (Dkt. 47 at 3:13–18.))  This is a non-sequitur.  The court in *Ortiz* never addressed the adequacy of plaintiffs' pleadings, but rather was "informing plaintiffs of additional information the court wishes to receive and consider before proceeding" on plaintiffs' motion for class settlement approval.  *Ortiz*, 2016 U.S. Dist. LEXIS 160588 at *2.

[3] Only the performance since February 2010 can be at issue here, in light of the six-year limitations period set by 29 U.S.C. § 1113(1).

1  allege why the selection of a safe, liquid, and commonly-selected investment option that has been
2  explicitly sanctioned as a prudent capital preservation alternative by the Ninth Circuit and the
3  Department of Labor ("DOL") should be cast as imprudent, particularly when half of all 401(k)
4  plans do not offer a stable value fund, per the GAO Report from plaintiffs' own Amended
5  Complaint.  (*See* Dkt. 44, Ex. A at 11.)  Plaintiffs contend that defendants' choice to offer a
6  money market fund is "at best . . . merely consistent with lawful conduct" (Dkt. 47 at 11
7  (emphasis and quotations omitted)), but the burden is not on defendants to offer anything more.
8  *Cf. Iqbal*, 556 U.S. at 678.

9  Plaintiffs also misstate this Court's previous ruling in arguing that the "Court suggested
10 that it is *per se* prudent and loyal for a fiduciary of a large plan to provide a money market fund."
11 (Dkt. 47 at 9.)  To the contrary, this Court held that, "[w]ithout some facts that raise an inference
12 of imprudence in the selection of the money market fund – apart from the fact that stable value
13 funds may provide a somewhat higher return than money market funds – plaintiffs have failed to
14 state a claim."  (Order at 14.)  Dredging up materials for the Amended Complaint that highlight
15 the risks of money market funds may add paragraphs to plaintiffs' allegations, but that does not
16 change the fact that stable value funds take greater risks than money market funds by investing in
17 longer-term securities.  (*See*, *e.g.*, Dkt. 44, Ex. C at 7.)  As the Chevron Plan also offered a range
18 of fixed income funds with the same or longer durations as stable value, and without the fees that
19 stable value funds impose, plaintiffs' new allegations do not advance their claim that it was
20 imprudent for the Plan not to offer stable value in lieu of the Plan's money market fund.

21       **B.**     **This Court Followed Ample Authority In Holding That Offering Retail Share Classes Is Not Imprudent.**
22

23 This Court followed *Hecker*, *Loomis*, *Renfro*, and *Tibble I* in holding that it is not
24 imprudent to offer more expensive share classes where a plan derives a collateral benefit from the
25 investments, such as the defrayal of recordkeeping and administrative costs.  (Order at 18:15–20.)
26 Though plaintiffs again argue that defendants have an obligation to provide an alternative
27 explanation for the selection of higher-cost share classes for certain funds (Dkt. 47 at 14–15),
28 plaintiffs themselves have already offered the explanation.  Specifically, they concede in the

Amended Complaint that, prior to March 31, 2012, "Vanguard received 10 bps of internal revenue sharing on the retail (Investor) share class Vanguard mutual funds" in order to pay for recordkeeping. (Am. Compl. ¶ 120; *see also* Dkt. 47 at 20 (detailing 10 bps recordkeeping credit for investor class shares of Vanguard funds); Dkt. 44, Vergara Decl., Ex. K at 4 (explaining that the change to fixed recordkeeping fees will result in the implementation of cheaper share classes).) The Court need look no further for the "obvious, alternative explanation" for why the Chevron Plan included retail share classes of certain funds—those share classes paid the Plan's recordkeeping expenses before the Plan's fiduciaries negotiated a flat, per-participant fee in 2012 in exchange for moving to the cheaper, institutional share classes (*see* Dkt. 44 at 5).[4]

Moreover, as this Court has already found, *Braden* does not support plaintiffs' claim because the alleged selection of retail-class mutual funds in that case was accompanied by allegations that the funds paid kickbacks to the plan's trustee in exchange for including the funds in the plan. (Order at 21 (citing *Braden*, 588 F.3d at 590, 94–95).) That is a far cry from plaintiffs' new and implausible allegation that defendants were compensating Vanguard for its publicly disclosed policy of passively voting securities in favor of management positions. (*See infra* at Section III.C.)

As the Court reasoned in its Order, ample circuit authority holds that merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach. (Order at 19:5–7.) Plaintiffs wish to relitigate that ruling, and again argue, as they did in opposition to the motion to dismiss the original Complaint, that plaintiffs' identification of specific alternative investment options somehow distinguishes their facts from *Hecker*, *Loomis*, and *Renfro*. Yet the opposition is not clear as to what, if any, principled distinction follows from identifying particular funds in the Plan lineup that marketed share classes cheaper than those offered—particularly when plaintiffs have acknowledged that the more

---

[4] Plaintiffs also argue that, where a complaint raises allegations that fiduciaries offered share classes more costly than the least expensive option, *Tibble I* requires defendants to provide a "reasonable explanation." (Dkt. 47 at 4.) *Tibble I* says no such thing; rather, the Ninth Circuit upheld a finding of fiduciary breach following a trial in which the evidence did not show defendant had maintained a sufficient process. *Tibble I* at 1137–39.

6
DEFS.' REPLY ISO MOT. TO DISMISS
CASE NO. 4:16-CV-00793-PJH

1  expensive share classes paid for Vanguard's recordkeeping services.  This Court can once again
2  follow ample authority in other circuits and confirm that plaintiffs have failed to state a claim in
3  alleging that the Chevron Plan fiduciaries sometimes offered retail share classes.

### C. Plaintiffs Still Fail to State Any Claim Of Fiduciary Breach For Excessive Recordkeeping Fees.

Plaintiffs' Count III still represents nothing more than a meritless assault on the very common practice of using investment fees to defray the costs of plan recordkeeping ("asset-based" fee arrangements)—and courts have repeatedly held that such allegations fail to state a claim for fiduciary breach.[5]  Indeed, plaintiffs acknowledge that nothing in ERISA prohibits asset-based fee arrangements, but they offer that such arrangements "are subject to abuse if not monitored properly."  (Dkt. 47 at 18.)  But judicially noticeable materials, as well as documents incorporated by reference into the Amended Complaint, demonstrate that Chevron actively monitored its revenue sharing arrangements, both moving to cheaper share classes with lower revenue sharing for multiple funds in 2010 and 2011 (*see* Dkt. 27, 2011 Form 5500, Ex. F to Vergara Decl.), and in 2012 negotiating and disclosing to participants the type of per-participant recordkeeping arrangement that plaintiffs waited four years to assert the Plan should have adopted sooner.  (*See* Dkt. 44, Ex. K to Vergara Decl.)  These judicially noticeable materials belie plaintiffs' speculation that "the process if any, by which Defendants monitored the compensation paid to Vanguard was tainted by failure of effort, competence, or loyalty."  (Dkt. 47 at 23.)  Indeed, this Court has found that these facts "plausibly suggest that defendants were monitoring recordkeeping fees to ensure that they did not become unreasonable."  (Order at 26:7–9.)[6]

The Amended Complaint offers only two changes to the claim that "Chevron caused the Plan to pay excess administrative fees to Vanguard" (Am. Compl., ¶ 162)—a wild guess about

---

[5] *See*, *e.g.*, *Loomis v. Exelon Corp.*, 658 F.3d 667, 672–73 (7th Cir. 2011) ("Likewise it isn't clear to us why participants would view a capitation fee as a gain. . . .[F]lat payments per participant may help some participants but hurt others, depending on the size of each participant's account.").

[6] Plaintiffs also continue to assert that a "failure to solicit competitive bids," considered alone, is a fiduciary breach (*id.*)—but this Court has already held that this allegation has "no legal foundation." (Order at 26:10–14.)

Vanguard's recordkeeping fees, and a hollow allegation of purported conflict. Plaintiffs have not remedied the flaws that this Court identified in holding that plaintiffs failed to state a claim for excessive recordkeeping fees in the original Complaint. (*See generally* Order at 22–27.)

### 1. *Plaintiffs Failed to Allege Facts to Plausibly Suggest The Recordkeeping Fees Paid to Vanguard Prior to March 2012 Were Excessive.*

As this Court recognized, any claim that Vanguard's recordkeeping fees were excessive necessarily requires that plaintiffs allege what those fees were and how they were excessive. (Order at 27:17–20; *see also* Hearing Tr. at 35:14–15 (Court: "How do you know this is excessive unless you compare it to something that isn't?").) To attempt to address this deficiency, plaintiffs have concocted an estimate of Vanguard's incremental compensation for recordkeeping services in 2010 and 2011, comparing that guess to the fees Chevron negotiated with Vanguard in 2012, after a substantial increase in plan assets. (Am. Compl., ¶ 125.) Plaintiffs' opposition confirms this "estimate" has no basis and is a wild guess. They concede that the source of their per-participant estimate includes a host of other fees paid to Vanguard that are unrelated to recordkeeping, and that they do not know how much of those fees actually relate to recordkeeping. (Dkt. 47 at 19:9–16).[7] In an attempt to salvage their allegations of the amount of recordkeeping fees paid to Vanguard, they ask the Court to assume they over-estimated by a factor of two, but at the same time they concede there is no basis for that estimate either. (Dkt. 47 at 19:18–20). As defendants explained in their opening brief (*see* Dkt. 44 at 17–21), the Court need not give plaintiffs' guess any weight when it is contradicted by documents referenced in plaintiffs own pleading. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.") (citing *Mullis v. United States Bankr. Ct.*, 828 F.2d 1385, 1388

---

[7] Plaintiffs contend in their opposition that most of these fees are nonetheless for recordkeeping (Dkt. 47 at 19), but that is not alleged in the Amended Complaint and does not excuse their eliding this issue when referencing the 5500s in the Amended Complaint. Moreover, Exhibit 6 to plaintiffs' opposition shows that Vanguard received substantial fees for a wide variety of services beyond recordkeeping, none of which are challenged by plaintiffs. (*See* Dkt. 47-7 at 4.)

(9th Cir. 1987)).[8]

### 2. Plaintiffs' Allegations That Chevron Had Illicit Motives to Drive Higher Recordkeeping Fees to Vanguard Are Also Barren.

Plaintiffs also suggest in the Amended Complaint that the Plan fiduciaries' administration of the Plan was infected by "conflict of interests" resulting from Chevron's relationship with Vanguard. They stop short of alleging an actual *quid pro quo*—but even what they do allege is unsupported by facts. Their claims of divided loyalties thus ring hollow; they allege no benefit to Chevron resulting from the Plan's arrangement with Vanguard that Chevron would not have received even absent any such relationship.

First, there is no substance to plaintiffs' suggestion that the Plan fiduciaries negotiated with Vanguard to compensate Vanguard for its alleged practice of proxy voting consistent with management. The allegation is undermined by the concession in the Amended Complaint that whatever benefit Chevron received from Vanguard's proxy voting policy, Chevron would have received even if Vanguard were not the Plan's recordkeeper. (*See* Am. Compl., ¶¶ 32–34.) The Amended Complaint also concedes that the Plan fiduciaries negotiated reductions in Vanguard's recordkeeping compensation on multiple occasions. (*See* Am. Compl., ¶¶ 120, 123.) Nor is it plausible that Vanguard, a company which returns profits to its own fund owners,[9] would be motivated to alter its proxy votes as a result of a few million dollars in recordkeeping fees when it has $3 trillion in assets under management. (Am. Compl., ¶ 32.)

Second, plaintiffs' speculation that Vanguard provided discounted services to seven non-qualified Chevron plans is equally specious. Plaintiffs offer no factual basis for the contention that Vanguard's services to Chevron's non-qualified plans were priced below market. Nor do plaintiffs allege any harm to the Plan; for example, they do not allege that, had Chevron paid different fees on the corporate plans, it would have been offered lower fees on the employee Plan.

---

[8] Plaintiffs misstate the impact of *Sprewell* (*see* Dkt. 47 at 20 n.9); the Plan Form 5500s contradict not only "unwarranted deductions of fact," but plaintiffs' purported facts themselves, by showing that plaintiffs' recordkeeping fee allegations include *non*-recordkeeping fees.

[9] *See*, *e.g.*, "Why Ownership Matters," *available at* https://about.vanguard.com/what-sets-vanguard-apart/why-ownership-matters/.

And even assuming Vanguard priced its services to all of Chevron's plans lower than it otherwise would have based on the overall size of its relationship with Chevron, Chevron would have at best received an "incidental benefit" from the arrangement, which is not a fiduciary breach. *See, e.g.*, *Morse v. Stanley*, 732 F.2d 1139, 1146 (2d Cir. 1984); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 445–46 (1999). Chevron cited this case law in its opening brief (*see* Dkt. 44 at 18), and plaintiffs offered nothing in their opposition to contest it.

### 3. *Plaintiffs' Recordkeeping Fee Claim Relies on Hindsight to Assert that the Fiduciaries Should Have Transitioned Away from Asset-Based Fees Sooner.*

Even putting aside the flaws in plaintiffs' guesswork on the amount of recordkeeping fees in 2010 and 2011 and the non-existent "conflicts," plaintiffs' claim still fails. First, it boils down to an assertion that Chevron should have foreseen that the market would go up—and that Plan assets would increase as a result—and renegotiated its asset-based fee arrangement sooner than March 2012. Plaintiffs conceded as much at the hearing on defendants' motion to dismiss the original Complaint. (Hearing Tr. at 34:1–2 ("the arrangement [defendants] were able to negotiate in 2012 should have been done a lot sooner").) This bare allegation is insufficient to state a claim, as plaintiffs still fail to answer the Court's reasonable follow-up question—when did that negotiation need to occur to escape a claim of fiduciary breach? (*See id.* at 34:15–18.)

Second, reducing an asset-based fee to a per-participant charge ignores the benefits of such arrangements. Locking in fees as a percentage of assets, rather than as a fixed dollar amount, shifts risk to the recordkeeper, which will earn less in fees during a bear market. That is, in part, why plaintiffs can point to no authority condemning such percentage-based arrangements, and why such arrangements are broadly accepted in the industry.[10] Moreover, as this Court no doubt recalls, stock markets declined substantially in 2008 and 2009 as a result of the financial crisis—and so Vanguard would have taken a substantial hit in recordkeeping revenues as a result

---

[10] *See*, *e.g.*, "A Look at 401(k) Plan Fees," U.S. Department of Labor, August 2013, p. 4 (fees for "services, such as recordkeeping . . . may be stated either as a flat fee or as a percentage of the amount of assets invested in the fund."), *available at*: https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/401kFeesEmployee.pdf.

of its asset-based fee arrangements during that market downturn.[11]  Again, the question in a claim for breach of the duty of prudence is whether the challenged decision was imprudent at the time fiduciaries made the decision.  *See*, *e.g.*, *Tibble I*, 729 F.3d at 1136.  Plaintiffs offer no facts supporting their suggestion that the Plan's fiduciaries should have anticipated an increase in Plan assets such that asset-based fees should have been abandoned as early as 2010 or 2011.  Nor does the Amended Complaint allege that Vanguard (or any other recordkeeper) would have accepted the fees set out in the 2012 agreement any sooner.  Instead, the Amended Complaint relies only on the carefully-crafted conclusion that "Chevron could have and should have either obtained a readily-available flat fee for recordkeeping services or capped the amount of revenue sharing to ensure that excessive amounts were returned to the Plan."  (Am. Compl., ¶ 125.)

### 4. Plaintiffs' Claim Is Additionally Barred By The Three-Year Statute Of Limitations in ERISA § 413.

The Amended Complaint only challenges the reasonableness of the administrative fees charged by the Plan prior to March 31, 2012 (*see* Am. Compl., ¶¶ 120–22, 124)—yet plaintiffs received a detailed disclosure from Chevron in February 2012 stating that:

- A portion of Vanguard's mutual fund investment management fees had been used to cover plan administrative expenses;
- Administrative expenses would now be covered by a new, flat quarterly fee;
- As a result, some Vanguard funds would convert to lower-cost share classes;
- Non-Vanguard mutual funds which paid Vanguard a portion of the investment management fee for recordkeeping would rebate that money to participants; and
- The rebate would be 0.35% for two Artisan funds, and 0.10% for a Neuberger Berman fund.  (*See* Dkt. 44, Vergara Decl., Ex. K, 2012 Newsletter at 3, 6.)

---

[11] The Plan's mutual fund assets declined by more than a third during the downturn, from $6.5 billion at the end of 2007 to $4.1 billion at the beginning of 2009.  (*See* Dkt. 44, Vergara Decl., Ex. F, 2007 Form 5500, Schedule H, Line 13 at p. 12; Ex. G, 2008 Form 5500, Schedule H, Line 13 at p. 11; Ex. H, 2009 Form 5500, Schedule H, Line 13 at p. 11.)

Plaintiffs argue that this disclosure was inadequate in light of plaintiffs' claim that defendants failed to monitor revenue sharing. (Dkt. 47 at 21:28–22:4.) Yet the 2012 newsletter establishes that the Plan fiduciaries were monitoring revenue sharing, and negotiating to change the revenue sharing paid to Vanguard. Further, plaintiffs' allegations in the Amended Complaint offer no facts beyond what was already available to plaintiffs in the 2012 newsletter. Plaintiffs cannot have it both ways—arguing, for purposes of avoiding the statute of limitations, that they lacked sufficient detail in 2012 to state a claim, while claiming that the same level of detail known to them in 2012 and alleged in the Amended Complaint is sufficient to defeat defendants' motion to dismiss.[12]

Plaintiffs also argue that knowledge of the Plan's recordkeeping fee arrangement is 'the wrong type of knowledge," citing *Tibble I*, because they allege that the Plan fiduciaries failed to adequately monitor the recordkeeping paid to Vanguard through revenue sharing, and that nothing in the 2012 Newsletter would have provided plaintiffs with knowledge of this purportedly flawed fiduciary process. (Dkt. 47 at 22:2–9.) Yet once again, this argument runs headlong into the Amended Complaint itself, which shows that the Plan fiduciaries had a robust process in place to monitor Vanguard's recordkeeping compensation, including moving to participant-based fees in 2012. In short, even in the event plaintiffs were deemed to have stated an adequate claim for excessive recordkeeping fees, that claim would be time-barred under 29 U.S.C. § 1113(2), as plaintiffs possessed the same actual knowledge in 2012 that is the basis of their claim today.

### D. Plaintiffs Still Fail To State Any Claim That The Plan Fiduciaries Should Have Removed The Artisan Small Cap Value Fund Sooner Than They Did.

Plaintiffs continue to base their claim that Plan fiduciaries imprudently failed to monitor and remove the ARTVX Fund on the Fund's allegedly poor performance, an approach this Court has rejected. (Order at 31:12–32:17.) In an attempt to salvage the claim, plaintiffs now also argue that defendants were motivated to retain the ARTVX Fund until January 2014 (despite poor

---

[12] Plaintiffs' citations to *Tibble I* and *Fish v. Greatbanc Trust Co.*, 749 F.3d 671 (7th Cir. 2014) are inapposite, because neither addresses a situation where plaintiffs have slept on facts for four years, offering no factual allegations that were not available before the limitations period expired.

1  performance in 2012 and 2013) in order to drive more revenue-sharing money to Vanguard for its
2  recordkeeping role, allegedly in compensation for its proxy-voting policy.  (Dkt. 47 at 6, 23–24.)
3  This new contention makes no sense, as it is contradicted by materials on which plaintiffs rely.

4        First, beginning in 2012 (and before the time plaintiffs claim defendants should have
5  removed the ARTVX Fund from the lineup), all revenue sharing from ARTVX was rebated to the
6  Plan.  As explained in the 2012 recordkeeping agreement plaintiffs submitted with their
7  opposition, "[e]ffective January 1, 2012, an administrative fee reimbursement *equal to the*
8  *amount of all fund subsidies* (of any kind) received by Vanguard attributable to a plan's
9  investment in the non-Vanguard funds are to be credited to the applicable Plan . . . ."  (Decl. of
10 Heather Lea in Support of Ptfs.' Opposition to Defs.' Mot. to Dismiss ("Lea Decl."), Ex. 6 at 7,
11 n.1 (emphasis added).)

12       Second, even if Vanguard had continued to receive ARTVX revenue sharing, plaintiffs do
13 not (and cannot) allege that there were no equivalent small-cap funds paying just as much.  There
14 is simply no factual basis for plaintiffs' assertion that Plan fiduciaries tolerated ARTVX's alleged
15 underperformance to benefit Vanguard—and plaintiffs are left with nothing more than the same
16 hindsight-based critique of the ARTVX fund's performance that led this Court to dismiss the
17 claim.  (*See* Order at 31:12–32:17 ("[p]oor performance, standing alone, is not sufficient to create
18 a reasonable inference that plan administrators failed to conduct an adequate investigation").)

19     **E.**    **Plaintiffs' New Prohibited Transactions Claim Is Barred By The Statute Of Limitations.**
20

21       Plaintiffs allege in Count IV that "causing the Plan to engage Vanguard to be the Plan's
22 recordkeeper" was a prohibited transaction under 29 U.S.C. § 1106(a).  (Am. Compl., ¶¶ 166,
23 167.)  But plaintiffs do not dispute that the decision to retain Vanguard occurred before February
24 2010—prior to the six-year limitations period in 29 U.S.C. § 1113(1).  (Dkt. 47 at 22.)  In fact,
25 the Amended Complaint alleges that "Chevron selected Vanguard as the Plan's recordkeeper" in
26 2002, fourteen years ago.  (Am. Compl., ¶ 28.)  Plaintiffs' only argument that their prohibited
27 transaction claim is not time-barred is that the "continuing duty to monitor," discussed in *Tibble*,
28 should be extended to apply in prohibited transaction claims, even where the alleged transaction

1  is the mere retention of a third-party service provider more than six years prior to the claim. Yet
2  *Tibble* is tethered specifically to § 404(a)(1)(B) of ERISA, and hinges on the common law duty to
3  monitor incorporated into § 404's duty of prudence. *Id.*, 135 S. Ct. at 1828–29. A prohibited
4  *transaction* under ERISA § 406 is a point-in-time event; a duty to monitor a past occurrence
5  makes no sense. Indeed, the Ninth Circuit has opined that there is no such thing as a "continuing"
6  prohibited transaction—as the plain language of "transaction" means it is a point-in-time event.
7  *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) ("The decision
8  by the Oremet Defendants to *continue* to hold 15% of Plan assets in employer stock was not a
9  'transaction.' It was merely a lawful decision to remain in full compliance with the explicit
10 language of the Plan's terms.").

11        Putting aside that plaintiffs cite only an unpublished, district court decision for the
12 proposition that the duty to monitor applies equally to prohibited transactions claims, any duty to
13 monitor would not save the prohibited transactions claim plaintiffs actually plead. Unlike in *In re*
14 *Northrop Grumman Corp. ERISA Litig.*, No. CV 06-6213, 2015 WL 10433713 (C.D. Cal. Nov.
15 24, 2015), there is no allegation here of "annual proposals that set forth the schedule of services"
16 Vanguard would provide each year, *id.* at 26.[13] Plaintiffs allege only that engaging Vanguard in
17 2002 was a prohibited transaction. Plaintiffs offer no theory of how a continuing duty to monitor
18 affects a static decision made fourteen years prior to the claim plaintiffs have asserted, and so
19 dismissal under Rule 12(b)(6) is warranted. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682
20 (9th Cir. 1980) ("If the running of the statute is apparent on the face of the complaint, the defense
21 may be raised by a motion to dismiss.").

22        **F.      Plaintiffs Concede That Their Duty To Monitor Claim Is Derivative.**
23        Finally, plaintiffs concede that Count VI, their failure to monitor claim, is entirely
24 derivative and admit they are unable to plead additional facts in support of the claim, including
25 any facts about how the monitoring process was purportedly deficient or whom Chevron

---

[13] Unlike *Northrop Grumman*, there is also no allegation here of self-dealing to an in-house service provider. *See id.* at *7.

1  allegedly failed to monitor.  (Dkt. 47 at 25.)

### G. Dismissal Should Be With Prejudice.

This Court issued a detailed, 35-page Order outlining the gaps in plaintiffs' original Complaint.  Plaintiffs were provided with the opportunity to cure their defective claims, and failed to allege sufficient additional facts to assert any plausible claims against defendants.  In fact, plaintiffs' pleas in their opposition for the Court to reconsider and reverse its prior decision reveal that plaintiffs have already put their best foot forward and that allowing further amendment would be futile.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373–74 (9th Cir. 1990) (affirming district court's dismissal with prejudice and denying plaintiff leave to amend second amended complaint where "any further amendment to the complaint would likely prove futile").

Moreover, "[t]he district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint." *Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986) (citation omitted); *see Song Fi, Inc. v. Google, Inc.*, No. C 14-5080 CW, 2016 U.S. Dist. LEXIS 83301, at *11 (N.D. Cal. June 27, 2016) (granting motion to dismiss without leave to amend "because plaintiffs have already had an opportunity to amend").  Because plaintiffs were already given an opportunity to cure the deficiencies in their claims, they have shown their claims cannot be saved by further amendment and should be dismissed with prejudice.  *See Fidelity Fin. Corp.*, 792 F.2d at 1438; *Kay v. Likins*, 160 F. App'x. 605, 608 (9th Cir. 2005) (affirming district court's denial of leave to amend a second time where plaintiff was notified of the deficiencies in the initial complaint and failed to rectify them in the amended complaint).

## IV. CONCLUSION

For the reasons stated above and in defendants' underlying motion to dismiss, plaintiffs' Amended Complaint should be dismissed, this time with prejudice.

| | |
|---|---|
| Dated: December 16, 2016 | M. RANDALL OPPENHEIMER<br>BRIAN D. BOYLE<br>CATALINA J. VERGARA<br>O'MELVENY & MYERS LLP<br><br>By: */s/ Catalina J. Vergara*<br>       Catalina J. Vergara<br><br>Attorneys for Defendants<br>CHEVRON CORPORATION and<br>ESIP INVESTMENT COMMITTEE |